FIRST DIVISION

February 3, 2003

No. 1-01-3716

ILLINOIS EMCASCO INSURANCE COMPANY, ) Appeal from the

) Circuit Court of

Plaintiff-Appellant, ) Cook County

)

v. ) )

NORTHWESTERN NATIONAL CASUALTY COMPANY, ) Honorable

) Nancy Jo Arnold,

Defendant-Appellee. ) Judge Presiding

JUSTICE McNULTY delivered the opinion of the court:

In 1998 Balthazar Rodriguez fell while working on a construction project.  He sued the general contractor, R.A. Faganel Builders (Faganel), seeking to recover damages he incurred due to the fall.  Faganel tendered defense of the suit to Northwestern National Casualty Company (Northwestern).  Northwestern had issued a policy to Kol Painting (Kol), and the policy named Faganel as an additional insured.  But the policy limited coverage for Faganel to liability imputed to Faganel for Kol's acts.  Northwestern refused to defend Faganel against the lawsuit Rodriguez filed.

Illinois Emcasco Insurance Company (Emcasco), which also insured Faganel, accepted Faganel's tender of the defense against Rodriguez's suit.  Emcasco then filed the lawsuit now on appeal, seeking a judgment declaring that Northwestern breached its insurance contract by refusing to defend Faganel.  Although the trial court acknowledged that Faganel might be liable in the underlying suit based on imputed liability for Kol's conduct, the court found that Rodriguez's complaint did not on its face sufficiently suggest that Faganel's liability would fall under the coverage of Northwestern's policy.  The trial court granted Northwestern 
summary judgment
 on Emcasco's complaint.

We hold that an insurer has a duty to defend its insured against any complaint that leaves open the possibility of coverage.  The insurer may refuse to defend only when the complaint, considered in light of the insurance policy, precludes the possibility of coverage.  Because we agree with the trial court's conclusion that Rodriguez's complaint does not preclude coverage under Northwestern's policy, we hold that Northwestern had a duty to defend Faganel.  Therefore, we reverse the judgment of the trial court and remand for further proceedings.

BACKGROUND

In March 1997 Kol purchased commercial general liability coverage from Northwestern.  The policy provides: 

"[Northwestern] will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' *** to which this insurance applies. [Northwestern] will have the right and duty to defend any 'suit' seeking those damages."

Kol paid an additional premium for a modification of the policy naming Faganel as another party insured under the policy.  The modification provides that the policy covers Faganel "only with respect to liability imputed to [Faganel] as a result of negligent acts or omissions of [Kol]."

Rodriguez sued Faganel and later added Kol as a codefendant.  Rodriguez alleged that Faganel acted as general contractor for construction of a residence, and Rodriguez worked as a drywaller and painter on that project.  According to the complaint, on January 19, 1998, Rodriguez fell off the floor of the upper level of the home into a stairwell.  He alleged that both Faganel and Kol, "through [their] duly authorized agents," violated duties to keep the worksite reasonably safe, because Faganel and Kol failed to place guardrails or other warnings around the stairwell.  Although Rodriguez described Kol as a "contractor or subcontractor" on the project, he made no allegations regarding the relationship between Faganel and Kol.  The complaint on its face did not establish whether Kol might count, for purposes of the lawsuit, as one of Faganel's duly authorized agents.

When Faganel tendered the suit to Northwestern, Northwestern replied that it was "unable to accept this tender of defense due to many unknown facts."  Northwestern did not sue for a judgment declaring that it had no duty to defend Faganel.

Faganel's general liability insurer, Emcasco, agreed to defend Faganel, but Emcasco sued for a declaratory judgment and for damages resulting from Northwestern's breach of its insurance contract.

Both Northwestern and Emcasco moved for 
summary judgment
 on Emcasco's claim against Northwestern for breach of contract.  After hearing oral argument on the motions, the court said:

"The Court finds that looking at those pleadings [Rodriguez filed against Faganel], nowhere in them do they present potential coverage under additional insurance endorsement of Northwestern policy.

***

Ultimately it may turn out that the drywall [contractor Kol] here will be found to have been agent of the general contractor.

And that the liability of the general contractor may result from negligence of the drywall contractor being imputed to it within the meaning of this additional insured endorsement.

But realistically pleadings do not fairly present the policy."

On that basis, the trial court held that Northwestern had no duty to defend Faganel, so the court granted Northwestern 
summary judgment
 on Emcasco's complaint.

ANALYSIS

We review the 
summary judgment
 
de novo
. 
Travelers Insurance Co. v. Eljer Manufacturing, Inc.
, 197 Ill. 2d 278, 292 (2001).  Courts look to the allegations of the underlying complaint to determine an insurer's duty to defend its insured. 
United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.
, 144 Ill. 2d 64, 73 (1991).  The insurer has a duty to defend if the complaint alleges facts potentially within policy coverage. 
Wilkin
, 144 Ill. 2d at 73.  "An insurer may not justifiably refuse to defend an action against its insured unless it is clear from the face of the underlying complaints that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage." (Emphasis omitted.)  
Wilkin
, 144 Ill. 2d at 73.  The court must resolve all doubts concerning the scope of coverage in favor of the insured. 
Wilkin
, 144 Ill. 2d at 74.

The court in 
Wilkin
 further explained the standard in applying it to the insurer's arguments in that case.  The court held that the insurer had a duty to defend because the policy's provisions "do not preclude potential coverage under the policy." 
Wilkin
, 144 Ill. 2d at 81.  This application merely rephrased the test stated previously: an insurer must defend if the insurance contract might possibly cover the alleged source of liability.  The insurer may refuse to defend only if the insurance contract cannot possibly cover the liability arising from the facts alleged, and the contract cannot possibly cover that liability only when the terms of the policy clearly preclude the possibility of coverage.  As the court said in 
Insurance Co. of the State of Pennsylvania v. Protective Insurance Co.
, 227 Ill. App. 3d 360, 367 (1992), "an insurer can justifiably refuse to defend only when the allegations of the complaint clearly show on their face that the claim is beyond the coverage of the policy."  See also 
Korte Construction Co. v. American States Insurance
, 322 
Ill. App. 3d
 451, 457 (2001); 
Hankins v. Pekin Insurance Co.
, 305 
Ill. App. 3d
 1088, 1092 (1999).  Thus, if the insurance covers the liability on any set of facts consistent with the allegations needed to support recovery on any theory raised in the complaint, the insurance company cannot simply refuse to defend, without suing for a judgment declaring that it has no duty to defend.

Our supreme court acknowledged the continuing validity of the 
Wilkin
 standards in 
Employers Insurance of Wausau v. Ehlco Liquidating Trust
, 186 Ill. 2d 127 (1999).  The court held: 

"[W]here a complaint alleges facts potentially within the policy's coverage, an insurer taking the position that a claim is not covered cannot simply refuse to defend the suit.  Rather, the insurer must either defend the suit under a reservation of rights or seek a declaratory judgment that there is no coverage.  If the insurer fails to take either of these actions, the estoppel doctrine applies." 
Ehlco
, 186 Ill. 2d at 153.

The trial court here found that in the underlying action, Kol's negligence might be imputed to Faganel, and Faganel might be found liable on the basis of that imputed negligence.  Thus, the court found that a set of facts consistent with at least one theory advanced for Faganel's liability might fall within the coverage of Northwestern's policy.  Northwestern effectively conceded this: when Faganel first sent Northwestern Rodriguez's complaint, Northwestern responded that it could not determine whether it owed a duty to defend because of "many unknown facts."  That is, both Northwestern and the trial court concluded that Rodriguez's complaint, on its face, did not state sufficient facts to preclude the possibility of coverage under the policy.  Nonetheless the trial court held that Northwestern had no duty to defend because the "pleadings [did] not fairly present the policy."

In so ruling the trial court apparently relied on 
American Country Insurance Co. v. Cline
, 309 
Ill. App. 3d
 501 (1999).  In that case Cline sued Pepper, a general contractor, for injuries Cline suffered while he worked for Pepper's subcontractor, Hinsdale.  Pepper tendered defense of the suit to American Country Insurance (American), which had issued a policy to Hinsdale naming Pepper as an additional insured.  American sued for a judgment declaring that it had no duty to defend.  Cline's complaint did not allege that Hinsdale had charge of the work or that it acted negligently, but the complaint also did not allege that Hinsdale was not in charge of the work or that it acted with due care.  The appellate court said that American had no duty to defend because "[t]he allegations in Cline's complaint do not raise the possibility that Hinsdale was in charge of work or that its conduct caused the underlying injury." 
Cline
, 309 
Ill. App. 3d
 at 515.  The court found, as one of the bases for the decision, that Cline's failure to name Hinsdale as the negligent actor relieved American of the duty to defend, because Cline's complaint did not sufficiently suggest that Pepper would be liable based on imputed misconduct.

We cannot agree with 
Cline
 insofar as it suggested that the failure to specifically identify Hinsdale as the negligent actor relieved American of the duty to defend.  "[T]he duty to defend does not require that the complaint allege or use language affirmatively bringing the claims within the scope of the policy.  The question of coverage should not hinge on the draftsmanship skills or whims of the plaintiff in the underlying action." 
International Insurance Co. v. Rollprint Packaging Products, Inc.
, 312 Ill. App. 3d 998, 1007 (2000).  The insurer's duty to defend does not depend upon a sufficient suggestion of liability raised in the complaint; instead, the insurer has the duty to defend unless the allegations of the underlying complaint demonstrate that the 
plaintiff
 in the underlying suit will not be able to prove the insured liable, under any theory supported by the complaint, without also proving facts that show the loss falls outside the coverage of the insurance policy. See 
Korte Construction
, 322 
Ill. App. 3d
 at 457; 
Hankins
, 305 
Ill. App. 3d
 at 1092; 
Protective Insurance
, 227 
Ill. App. 3d
 at 367; 
Novak v. Insurance Administration Unlimited, Inc.
, 91 
Ill. App. 3d
 148, 151 (1980); 
Elas v. State Farm Mutual Automobile Insurance Co.
, 39 
Ill. App. 3d
 944, 947 (1976).  The insurer may simply refuse to defend only if the allegations of the underlying complaint preclude any possibility of coverage.

Northwestern here argues that certain documents apart from Rodriguez's complaint and the insurance contract establish that liability for Kol's negligence will not be imputed to Faganel because Kol worked as an independent contractor.  The complaint on its face does not establish Kol's status as an independent contractor.  While an insurer that brings a declaratory judgment action may have the right to rely on such extraneous evidence to show that it has no duty to defend, an insurer that simply refuses to defend may lose the right to present such evidence. See 
Ehlco
, 186 Ill. 2d at 153.  

Assuming the documents admissible here, we agree with the trial court's finding that the evidence did not preclude the possibility of imputed liability.  The fact that Kol considers itself an independent contractor, or that it counts as an independent contractor for some purposes, is not alone dispositive of the possibility of imputed liability for negligent acts. 
Hamilton v. Family Record Plan, Inc.
, 71 
Ill. App. 2d
 39, 49 (1966).  Imputation of liability may depend on the degree of control the general contractor maintains over the subcontractor. 
Hamilton
, 71 
Ill. App. 2d at 49-50; 
Great American Insurance Co. v. West Bend Mutual Insurance Co.
, 311 
Ill. App. 3d
 534, 537-38 (2000); 
Kozerski v. Deer Run Homeowners Ass'n
, 217 A.D.2d 841, 843, 629 N.Y.S.2d 518, 521 (1995).

The possibility of imputed liability that the complaint left open required Northwestern to defend Faganel.  Northwestern breached that duty.  We reverse the trial court's decision granting Northwestern 
summary judgment
 on Emcasco's complaint, and we remand for determination of the appropriate relief for the breach of contract.  Northwestern did not defend Faganel under a reservation of rights, and it did not bring a declaratory judgment action to establish the lack of coverage.  Under 
Ehlco
, Northwestern is estopped, in proceedings on remand, from raising policy defenses to coverage.

Reversed and remanded.

GORDON, P.J. and SMITH, J., concur.