Sixth Division
March 7, 2008

No. 1-06-2254

| | | |
|---|---|---|
| PEKIN INSURANCE COMPANY, | ) | Appeal from the Circuit Court |
| | ) | of Cook County |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED PARCEL SERVICE, INC., a Corporation, | ) | 05 CH 16630 |
| | ) | |
| Defendant-Appellee | ) | |
| | ) | |
| (Ron Aggen, | ) | Honorable |
| | ) | Peter Flynn, |
| Defendant). | ) | Judge Presiding |
| | ) | |

PRESIDING JUSTICE McBRIDE delivered the opinion of the court:

Defendant Ron Aggen filed a lawsuit against defendant United Parcel Service, Inc. (UPS), and Werner Company (Werner), alleging that he sustained severe and permanent injuries due to his fall from an unsafe and unstable ladder. UPS tendered its defense of Aggen's complaint to plaintiff Pekin Insurance Company (Pekin) because Pekin was the insurer of Swan Machinery Installation, Inc. (Swan), Aggen's employer, and UPS was a named additional insured on Swan's insurance policy. Pekin denied coverage because the additional insured endorsement was limited to liability incurred solely as a result of Swan's acts or omissions and the pleadings did not allege that Swan was solely at fault. Thereafter, Pekin filed this declaratory judgment action regarding its duty to defend in the Aggen litigation. After considering Pekin's motion for judgment on the pleadings and UPS's motion for summary judgment, the trial court found in favor of UPS and held that Pekin had an obligation under the policy to defend UPS in the Aggen litigation. Pekin

appeals that finding.

The facts giving rise to this litigation are not in dispute. In June 2005, defendant Ron Aggen filed a two-count complaint against UPS and Werner. Count I asserted a product liability claim against Werner, the manufacturer of the ladder, while count II raised a negligence claim against both UPS and Werner. In the negligence count, Aggen alleged that on and prior to October 3, 2003, "Defendants, and each of them, were engaged in the business of providing, servicing, maintaining and/or repairing" an A-frame ladder and "Defendants, and each of them, had, in fact, serviced, maintained and/or repaired" the ladder. Aggen claimed that UPS and Werner, "[n]otwithstanding their duty," were "guilty of the following careless and negligent acts and/or omissions: (a) Provided Plaintiff [Aggen] with an unsafe and unstable ladder from which to work."

Aggen claimed that the ladder was at the UPS facility in Palatine, Illinois, and he was there in the course of his employment as a machinery installer. As a direct and proximate result of the careless and negligent acts and/or omissions of UPS and Werner, the ladder "twisted, bent and/or broke." As a further direct and proximate result of the careless and negligent acts and/or omissions of "Defendants, and each of them," Aggen "sustained severe and permanent injuries, both externally and internally, and was, and will be hindered and prevented from attending to usual duties and affairs, and has lost, and will in the future lose, the value of that time."

Thereafter, both Werner and UPS filed third-party complaints for contribution against Swan. Both of these third-party complaints alleged that Swan was Aggen's employer and assigned Aggen to perform work at the UPS facility. The third-party complaints claimed that

Swan "owed a duty of ordinary care for the safety" of Aggen and that Swan committed one or more of the following acts and/or omissions: failed to properly train Aggen in the performance of his work, including the failure to provide instruction on the proper use of a folding ladder; failed to properly supervise Aggen in the performance of his work; and failed to provide proper equipment, such as a ladder, for Aggen's use in the performance of his work. The relief sought by Werner and UPS was that in the event of a judgment in favor of Aggen, judgment be entered in favor of Werner and UPS and against Swan in an amount commensurate with the relative degree of Swan's culpability.

Additionally, UPS's third-party complaint raised an indemnification claim against Swan. UPS alleged that on or about June 19, 2002, Swan entered into a contract with UPS in which Swan was "to provide conveyor repair work" at various locations and this agreement was in effect on the date that Aggen was injured. UPS further alleged that the contract between Swan and UPS contained an indemnity provision, which stated:

> "Contractor [Swan] hereby assumes the entire responsibility and
> liability for all Work, labor and materials provided hereunder.
> Contractor shall indemnify and hold harmless Owner [UPS] against
> all costs, damages, or liability, including reasonable attorney fees
> and other costs of defense, arising out of: (a) the performance or
> nonperformance of this Agreement by Contractor or its
> subcontractors, materialmen, agents and employees; or (b) injury to
> or death of any person (including Contractor's employees), or for

3

> damage to or loss of tangible property, caused in whole or in part by Contractor's negligence or that of its subcontractors, materialmen, agents, and employees. The foregoing indemnity shall not extend to liability for injury to or death of persons or property damage caused by Owner's sole negligence. The foregoing indemnity shall be construed in the broadest sense allowed by applicable state law."

UPS's prayer for relief asserted that if Aggen's injury was not caused by UPS's sole negligence, then Swan owed UPS indemnity for all damages attributable to it. UPS sought a judgment equal to the full amount of damages recovered by Aggen and other costs, including reasonable attorney fees and other costs of defense.

UPS tendered its defense in the Aggen lawsuit to Pekin. Pekin issued an insurance policy to Swan as the named insured, effective March 20, 2003, to March 20, 2004. UPS was an additional insured on the Pekin policy issued to Swan pursuant to an additional insured endorsement. The additional insured endorsement in Pekin's policy with Swan provided:

> "Who Is As Insured (Section II) is amended to include as an insured the person or organization shown in the schedule. Such person or organization is an additional insured only with respect to liability incurred solely as a result of some act or omission of the named insured and not for its own independent negligence or statutory violation."

1-06-2254

Pekin declined to defend UPS, and in September 2005, Pekin filed this declaratory judgment action seeking a determination that it owed no duty to defend UPS in the Aggen litigation. Pekin alleged that it had no duty to defend UPS for one or all of the following reasons: "(a) the additional insured endorsement provides no coverage to UPS for the negligence of UPS"; and "(b) Aggen sued UPS for negligence in connection with an accident of October 3, 2003, based on the alleged negligence of UPS toward Aggen." In May 2006, Pekin filed a motion for judgment on the pleadings and UPS filed a motion for summary judgment. In July 2006, the trial court conducted a hearing on the motions and, shortly thereafter, issued a written order granting summary judgment in favor of UPS and against Pekin.

This appeal followed.

On appeal, Pekin argues that the additional insured endorsement precludes coverage for UPS because UPS's liability did not result "solely" from Swan's acts or omissions. UPS maintains that the underlying pleadings create a possibility that UPS will be covered and, therefore, Pekin must defend UPS in the Aggen lawsuit.

"The construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court which are appropriate subjects for disposition by way of summary judgment." Crum & Forster Managers Corp. v. Resolution Trust Corp., 156 Ill. 2d 384, 391 (1993). Summary judgment is appropriate where the pleadings, depositions, and admissions on file, together with any affidavits and exhibits, when viewed in the light most favorable to the nonmoving party, indicate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2004). We

review cases involving summary judgment *de novo*. Ragan v. Columbia Mutual Insurance Co., 183 Ill. 2d 342, 349 (1998). "As in this case, where the parties file cross-motions for summary judgment, they invite the court to decide the issues presented as a matter of law." Liberty Mutual Fire Insurance Co. v. St. Paul Fire & Marine Insurance Co., 363 Ill. App. 3d 335, 339 (2005).

"To determine an insurer's duty to defend its insured, a court must look to the allegations of the underlying complaints. If the underlying complaints allege facts within or potentially within policy coverage, the insurer is obliged to defend its insured even if the allegations are groundless, false, or fraudulent." Northbrook Property & Casualty Co. v. Transportation Joint Agreement, 194 Ill. 2d 96, 98 (2000). Moreover, "[a]n insurer may not justifiably refuse to defend an action against its insured unless it is clear from the face of the underlying complaints that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage." Northbrook Property & Casualty Co., 194 Ill. 2d at 98. "[A]ny doubt with regard to such duty is to be resolved in favor of the insured." United Services Automobile Ass'n v. Dare, 357 Ill. App. 3d 955, 963 (2005).

Here, we are to compare the allegations in the Aggen complaint with Pekin's policy. In the underlying complaint, Aggen asserts that "Defendants [Werner and UPS], and each of them *** [p]rovided Plaintiff with an unsafe and unstable ladder from which to work." Aggen further alleged that this ladder "twisted, bent and/or broke" and "as a direct and proximate result of one or more of the aforesaid careless and negligent acts and/or omission of the Defendants, and each of them, the Plaintiff then and there sustained severe and permanent injuries."

The additional insured endorsement in Pekin's policy with Swan provided, in relevant part:

> "Such person or organization is an additional insured only with
>
> respect to liability incurred solely as a result of some act or
>
> omission of the named insured [Swan] and not for its [UPS] own
>
> independent negligence or statutory violation."

Pekin contends that it has no obligation to defend UPS in the underlying action because the allegations are not based "solely" on Swan's acts or omissions. Since the Aggen complaint raised a direct claim of negligence against UPS, Swan cannot be solely responsible and Pekin has no duty to defend. UPS responds that Pekin has a duty to defend because there is a possibility that UPS could be found vicariously liable based on Swan's negligent acts or omissions and that a finding of vicarious liability would be "liability incurred solely as a result of some act or omission of" Swan. UPS also asks this court to consider the third-party complaints filed by UPS and Werner against Swan to find coverage.

In support of its position on appeal, Pekin relies on Village of Hoffman Estates v. Cincinnati Insurance Co., 283 Ill. App. 3d 1011 (1996), and this court's recent decision in Pekin Insurance Co. v. Beu, 376 Ill. App. 3d 294 (2007). UPS, however, contends that these decisions are not applicable to the instant case because those decisions did not consider the possibility of vicarious liability.

In Village of Hoffman Estates, Joe Marsala, a subcontractor's employee, was injured in a fall off a platform at a construction site and filed a suit against the Village of Hoffman Estates (the Village), Leopardo-Tektonic and many others, for his alleged injuries. The Village, the owner of the construction project, had entered into a contract with Leopardo-Tektonic, the general

contractor. "Leopardo-Tektonic's responsibilities would include supervising all the work, coordinating all the construction methods, paying for all labor and materials and hiring a superintendent." Village of Hoffman Estates, 283 Ill. App. 3d at 1012-13. Leopardo-Tektonic purchased liability insurance from Cincinnati Insurance Co. (Cincinnati), and the Village was added as an additional insured on the insurance policy. Village of Hoffman Estates, 283 Ill. App. 3d at 1013.

The additional insured endorsement provided, in relevant part: " 'The "Persons Insured" provision is amended to include as an INSURED the person or organization named above but only with respect to liability incurred solely as a result of some act or omission of the NAMED INSURED.' " (Emphasis omitted.) Village of Hoffman Estates, 283 Ill. App. 3d at 1013. The Village tendered its defense of the Marsala suit to Cincinnati, which refused that tender. Village of Hoffman Estates, 283 Ill. App. 3d at 1013. The trial court granted Cincinnati's motion for summary judgment, finding no duty to defend. Village of Hoffman Estates, 283 Ill. App. 3d at 1013-14.

On appeal, the Village argued that there was a potential for coverage because the additional insured endorsement was ambiguous because it could "have more than one reasonable construction." Village of Hoffman Estates, 283 Ill. App. 3d at 1013. The reviewing court disagreed and found that the endorsement was "plain and unambiguous." Village of Hoffman Estates, 283 Ill. App. 3d at 1014. The court held that "[t]he endorsement specifically states that the Village is covered only if its liability was predicated *solely* on the acts or omissions of Leopardo-Tektonic." (Emphasis in original.) Village of Hoffman Estates, 283 Ill. App. 3d at

1014. "The term 'solely' implies exclusively or entirely." Village of Hoffman Estates, 283 Ill. App. 3d at 1014. The court's review of the record disclosed that the Marsala complaint alleged liability directly against both the Village and Leopardo-Tektonic. Each allegation in the underlying complaint was directed jointly and severally against "defendants, and each of them" and not solely against the named insured; therefore, the court concluded that the express terms of the endorsement were not met and the Village was not covered under Cincinnati's policy with Leopardo-Tektonic. Village of Hoffman Estates, 283 Ill. App. 3d at 1014.

Similarly, in Pekin Insurance Co., an employee of a decorating company was injured at a construction site and filed a negligence action against multiple parties, including Castle Builders, Inc., and Roger Beu, who was the owner of the property. Pekin Insurance Co., 376 Ill. App. 3d at 295. Roger Beu entered into a contract with Castle for the construction of a residence. Castle obtained a liability insurance policy from Pekin, the plaintiff in the present case, to which Beu was added as an additional insured. The additional insured endorsement was identical to that in the instant case:

> " **'1. Who is An Insured (Section II)** is amended to include as an
> insured the person or organization shown in the schedule. Such
> person or organization is an additional insured only with respect to
> liability incurred solely as a result of some act or omission of the
> named insured and not for its own independent negligence or
> statutory violation.' " (Emphasis in original.) Pekin Insurance Co.,
> 376 Ill. App. 3d at 294-95.

Beu tendered his defense to Pekin under Castle's additional insured provision when he was sued by Walter Hall, the injured employee. Pekin declined to defend him and filed a declaratory judgment action. Pekin Insurance Co., 376 Ill. App. 3d at 296. Pekin moved for a judgment on the pleadings, contending that it had no duty to defend Beu in the negligence action because the underlying complaint alleged liability based on Beu's own negligence and the policy did not provide such coverage for additional insureds. The trial court granted Pekin's motion. Pekin Insurance Co., 376 Ill. App. 3d at 296.

The fourth division of this court found the decision in Village of Hoffman Estates to be dispositive of the coverage issue in Pekin Insurance Co. First, the court noted that as in the Village of Hoffman Estates decision, the additional insured endorsement limited coverage to " 'liability incurred solely as a result of some act or omission of the named insured.' " (Emphasis omitted.) Pekin Insurance Co., 376 Ill. App. 3d at 297. The court also pointed out that the underlying complaint in Pekin "specifically allege[d] that 'as a direct and proximate result of [the negligence] of the Defendants, *and each of them*,' Hall suffered severe and permanent injuries," (emphasis added) and concluded that Pekin had no duty to defend Beu because the allegations in the Pekin underlying complaint "were not based solely on the acts or omissions of the named insured, but also were predicated on the additional insured's alleged independent acts of negligence." Pekin Insurance Co., 376 Ill. App. 3d at 297.

We agree with the conclusion reached in both Village of Hoffman Estates and Pekin Insurance Co. Looking at the Aggen complaint and Pekin's policy, the facts do not raise a potential for coverage. As in those cases, the underlying complaint alleges negligence against

10

"Defendants, and each of them" for Aggen's fall from the ladder and the resulting injuries. There is nothing in the underlying complaint to suggest that Swan's acts or omissions were "solely" to blame for Aggen's accident. Since negligence has been directly alleged against UPS, UPS is not covered by the additional insured provision in the Pekin policy.

UPS attempts to distinguish these cases by pointing out that the reviewing courts did not consider the possibility of vicarious liability under section 414 of the Restatement (Second) of Torts (the Restatement). Restatement (Second) of Torts §414 (1965). However, UPS's arguments regarding vicarious liability are not supported by the underlying pleadings. None of the cases cited by UPS involved a determination of an insurer's duty to defend based on the possibility of vicarious liability. Instead, the cases relied upon by UPS concerned whether an employer or general contractor had retained sufficient control over the work of an independent contractor so as to be held vicariously liable. We point out that in none of these cases was the general contractor found to have exercised sufficient control over the subcontractor's work so as to be vicariously liable. See Cochran v. George Sollitt Construction Co., 358 Ill. App. 3d 865 (2005); Recio v. GR-MHA Corp., 366 Ill. App. 3d 48 (2006); Connaghan v. Caplice, 325 Ill. App. 3d 245 (2001).

We also observe that section 414 of the Restatement is an exception to the general rule that "one who employs an independent contractor is not liable for the acts or omissions of the latter." Martens v. MCL Construction Corp., 347 Ill. App. 3d 303, 313 (2004). "The rationale for the general rule is that a principal generally does not supervise the details of an independent contractor's work and, thus, is not in a good position to prevent negligent performance, whereas

11

the essence of employment is that the employee submits to the employer's right to monitor and direct the details of the work in exchange for wages." Martens, 347 Ill. App. 3d at 313-14.

In Cochran, an employee of a subcontractor was injured at a construction project. The employee alleged negligence on the part of the general contractor in that the general contractor "failed to provide him with a safe place to work; failed to provide 'a safe, suitable, and proper support for [his] protection'; and failed to properly 'manage[], maintain[] or control[] the premises and the support equipment used thereon.' " Cochran, 358 Ill. App. 3d at 867. The general contractor moved for summary judgment, arguing that under section 414 of the Restatement, it owed no duty of care to the subcontractor's employees because "it did not exercise such control over the operative details of [the subcontractor's work] that [the subcontractor's] employees were not entirely free to perform the work in their own way." Cochran, 358 Ill. App. 3d at 871.

Section 414 of the Restatement provides:

> "One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care." Restatement (Second) of Torts §414, at 387 (1965).

The trial court granted the general contractor's summary judgment motion. The reviewing court looked to comment *a* of the Restatement, which states:

"If the employer of an independent contractor retains control over the operative detail of doing any part of the work, he is subject to liability for the negligence of the employees of the contractor engaged therein, under the rules of that part of the law of Agency which deals with the relation of master and servant. The employer may, however, retain a control less than that which is necessary to subject him to liability as master. He may retain only the power to direct the order in which the work shall be done, or to forbid its being done in a manner likely to be dangerous to himself or others. Such a supervisory control may not subject him to liability under the principles of Agency, but he may be liable under the rule stated in this Section unless he exercises his supervisory control with reasonable care so as to prevent the work which he has ordered to be done from causing injury to others." Restatement (Second) of Torts §414, Comment *a*, at 387 (1965).

Put another way, "the general contractor, by retaining control over the operative details of its subcontractor's work, may become vicariously liable for the subcontractor's negligence; alternatively, even in the absence of such control, the general contractor may be directly liable for not exercising his supervisory control with reasonable care." Cochran, 358 Ill. App. 3d at 874. The court concluded that "there [was] no basis for vicarious liability because no evidence was presented that [the general contractor]  so controlled the operative details of [the subcontractor's]

13

work that [the subcontractor's] employees were not entirely free to perform the work in their own way." Cochran, 358 Ill. App. 3d at 879.

As comment *c* to section 414 further explains:

> "In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way."

Restatement (Second) of Torts §414, Comment *c*, at 388 (1965).

While we agree that "[t]he question of coverage should not hinge on the draftsmanship skills or whims of the plaintiff in the underlying action" (International Insurance Co. v. Rollprint Packaging Products, Inc., 312 Ill. App. 3d 998, 1007 (2000)), nothing in the Aggen complaint suggests that UPS retained any control, let alone sufficient control, over the manner of Swan's work so as to be vicariously liable for the acts or omissions of Swan.

UPS also claims that the third-party complaints should be considered in determining the

14

duty to defend. Even if we were to consider the allegations made in those complaints, they would not change the results here. Like the underlying complaint filed by Aggen, the third-party complaints do not raise the potential of vicarious liability. Instead, the allegations claim that, in addition to UPS and Werner, Swan is also to blame for the injuries that Aggen sustained. In fact, the indemnification clause in the agreement between UPS and Swan, which is the basis of the indemnification count in UPS's third-party complaint, negates any contention that UPS retained control. The paragraph provides that: "Contractor [Swan] hereby assumes the entire responsibility and liability for all Work, labor and materials***." There is nothing in the contract regarding any control or supervisory power retained by UPS and none of the allegations in the pleadings imply that UPS exercised any control over Swan's work. UPS fails to argue how it retained control over Swan's work or what allegations in the complaint imply such control. Simply put, there are no allegations in any of the pleadings indicating any sort of control retained by UPS over the performance of Swan's work. Although UPS attempts to create this "possibility" of coverage on appeal, it, in fact, has no basis in any of the allegations of the underlying complaint and therefore, Pekin cannot be compelled to defend UPS in the Aggen action.

Additionally, we recognize that Aggen was prohibited from suing his employer, Swan, under the worker's compensation laws, but that did not preclude Aggen from alleging that UPS was vicariously liable for Swan's acts or omissions. Yet, Aggen did not make any allegations that Swan was at fault and that the only liability against UPS was vicarious. Moreover, the third-party complaints do not change the outcome because, as previously stated, the allegations in the third-

15

party complaints do not allege that UPS retained control over Swan's work. In finding a duty to defend, the dissent submits that there is a possibility that Swan will be held solely liable for providing Aggen with an unstable ladder; however, we find that neither the Aggen complaint nor the third-party complaints suggests that Swan provided the unstable ladder. Rather, the Aggen complaint alleges that UPS and Werner provided the ladder and the third-party complaints state that Swan failed to provide Aggen with proper equipment.

UPS also attempts to distinguish Village of Hoffman Estates by arguing that the additional insured endorsement at issue is qualified; that only UPS's independent negligence is excluded. UPS reasons that it would be covered for "nonindependent" negligence. However, UPS's argument fails to consider the entire provision. The additional insured endorsement provides, in relevant part: "Such person or organization is an additional insured only with respect to liability incurred solely as a result of some act or omission of the named insured ***and*** not for its own independent negligence or statutory violation." (Emphasis added.) This sentence explains two things: what is covered and what is not. Here, the allegations in the Aggen complaint relate to UPS's own independent negligence, which is not covered.

UPS also contends that "the mere fact that Swan employed Aggen creates a potential for coverage." To support this claim, UPS relies on United States Fire Insurance Co. v. Aetna Life & Casualty, 291 Ill. App. 3d 991 (1997), which is distinguishable from the instant case. In that case, an employee of a subcontractor was injured on a jobsite and sued the general contractor and owner for actions under the Structural Work Act and in negligence. Both the general contractor and the owner were added as additional insureds on the subcontractor's insurance policy with

16

United States Fire Insurance Co. (United States Fire). The additional insured endorsement provided coverage " ' only with respect to acts or omissions of the named insured in connection with the named insured's operations at the applicable location designated.' " <u>United States Fire</u>, 291 Ill. App. 3d at 994. The court concluded that United States Fire had a duty to defend because "[a] comparison of the allegations in the complaint and the endorsement raises the potential for coverage and, in turn, a potential for coverage is all that is necessary to trigger [United States Fire's] duty to defend." <u>United States Fire</u>, 291 Ill. App. 3d at 1000.

The key difference between <u>United States Fire</u> and the instant case is that the additional insured endorsement in <u>United States Fire</u> was much broader than the one at issue here. Here, the additional insured endorsement only provides coverage for "liability incurred solely as a result of some act or omission of the named insured." While UPS does acknowledge that the endorsement was "distinct" from that in Pekin's policy, UPS simply cites to <u>United States Fire's</u> conclusion and then states the same is true here without explaining how the language in Pekin's additional insured endorsement is amenable to that conclusion. As previously discussed, our comparison of the allegations of the underlying complaint and the additional insured endorsement does not show any potential for coverage. The decision in <u>United States Fire</u> has no impact on that conclusion.

Based on the foregoing reasons, we reverse the grant of summary judgment in favor of UPS and enter summary judgment for Pekin, pursuant to Supreme Court Rule 366. 155 Ill. 2d R. 366.

Reversed.

J. GORDON, J., concurs.

1-06-2254

JUSTICE McNULTY, dissenting:

I would adhere to the principles stated in Illinois Emcasco Insurance Co. v. Northwestern National Casualty Co., 337 Ill. App. 3d 356 (2003). A straightforward application of those principles supports the trial court's decision here. In Emcasco we said:

"The insurer's duty to defend does not depend upon a sufficient suggestion of liability raised in the complaint; instead, the insurer has the duty to defend unless the allegations of the underlying complaint demonstrate that the plaintiff in the underlying suit will not be able to prove the insured liable, under any theory supported by the complaint, without also proving facts that show the loss falls outside the coverage of the insurance policy. [Citations.] The insurer may simply refuse to defend only if the allegations of the underlying complaint preclude any possibility of coverage." Illinois Emcasco, 337 Ill. App. 3d at 361.

Aggen pleaded in his complaint that UPS and Werner "by and through their agents *** [p]rovided Plaintiff with an unsafe and unstable ladder from which to work." Nothing in the complaint precludes the possibility that Swan may qualify as an agent for whose fault Aggen seeks to hold UPS liable. See Cochran v. George Sollitt Construction Co., 358 Ill. App. 3d 865, 874 (2005). Thus, the complaint leaves open the possibility that a court might find UPS liable solely based on Swan's negligent act of providing its employee, Aggen, with an unstable ladder from which to work. The complaint's failure to specifically name Swan as the negligent agent of UPS should not excuse Pekin from providing a defense to the complaint. Accordingly, I would affirm the trial court's decision finding that Pekin owed UPS a duty to defend it against Aggen's

18

1-06-2254

complaint.