SIXTH DIVISION
JUNE 25, 2010

No. 1-09-1709

| | | |
|---|---|---|
| PEKIN INSURANCE COMPANY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | No. 08 CH 30823 |
| | ) | |
| ROSZAK/ADC, LLC; ROCKFORD | ) | |
| ORNAMENTAL IRON, INC; and | ) | |
| DEIRDRE HASTINGS, | ) | Honorable |
| | ) | Mary Anne Mason, |
| Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE ROBERT E. GORDON delivered the opinion of the court:

Plaintiff Pekin Insurance Co. (Pekin) filed this declaratory judgment action and appeals the trial court's denial of its motion for summary judgment and granting of Roszak/ADC, LLC's (Roszak) cross-motion for summary judgment, finding that Pekin owes Roszak a duty to defend. 735 ILCS 5/2-1005 (West 2008). In the underlying action, Deirdre Hastings had filed suit against Roszak, among others, alleging negligence and premises liability theories for personal injuries that she sustained while working on a construction site when Roszak was the general contractor (the Hastings action). Roszak tendered its defense of the Hastings action to Pekin under its coverage as an additional insured on Rockford Ornamental Iron, Inc.'s (Rockford) commercial general liability policy. Pekin declined to defend Roszak and filed an action seeking a declaratory judgment that it was under no duty to defend Roszak. On appeal, Pekin argues that the terms of the additional insured endorsement on Rockford's policy exclude Roszak from coverage. For the following reasons, we reverse.

BACKGROUND

On August 10, 2007, Deirdre Hastings filed a personal injury action against Roszak and Rockford, among others. In it, she alleges that she was an employed by Area Erectors, Inc. (Area Erectors), as an ironworker on a construction project located on Oak Avenue in Evanston, Illinois, when a load of structural steel escaped its rigging and struck her, causing serious personal injuries. Roszak served as the general contractor for the project. The Hastings complaint does not state the relationship between Roszak and Rockford. Specifically, it does not state that Rockford was a subcontractor. However, because the parties refer to Rockford as Roszak's subcontractor in their briefs and at oral argument, we will assume that Roszak hired Rockford as a subcontractor and that Rockford, in turn, hired Area Erectors as its subcontractor.

The amended complaint in the Hastings action consists of two counts each against five defendants. Count I, titled "Negligence," against Roszak alleged that Roszak

> "individually and through its agents, servants and employees, was present during the course of such erection and construction. [Roszak] participated in coordinating the work being done and designated various work methods, maintained and checked work progress and participated in the scheduling of the work and inspection of the work. In addition thereto, at that time and place, the defendant had the authority to stop the work, refuse the work and materials and order changes in the work, in the event that the work was being performed in a dangerous manner or for any other reason."

2

Count I also alleged that Roszak was negligent in the following ways:

"(a)   Failed to reasonably inspect, supervise and control the work site and the work being done thereon, when the defendant knew or in the exercise of ordinary care should have known, that adequate and proper inspection and control was necessary to prevent injury to the plaintiff;

(b)   Carelessly and negligently designated an unsafe and improper area for the staging and shaking out of structural steel;

(c)   Failed to enforce proper steel rigging, hoisting and offloading procedures;

(d)   Failed to properly supervise steel rigging, hoisting and offloading procedures;

(e)   Carelessly and negligently permitted steel rigging, hoisting and offloading procedures on site despite high winds;

(f)   Failed to suspend the work due to high winds;

(g)   Failed to follow it[s] own safety rules and procedures;

(h)   Failed to follow OSHA safety rules and procedures;

(i)   Failed to fulfill its onsite contractual safety obligations;

(j)   Failed to coordinate the work in a safe , suitable and proper manner;

(k)   Failed to schedule the work in a safe, suitable and proper manner;

(l)   Failed to require the crane operator to utilize the proper

3

booming procedures including proper boom length."

Count II, titled "Premises Liability," incorporated the allegations in count I and also alleged that Roszak "possessed, operated, managed, maintained and controlled or had a duty to possess, operate, manage, maintain and control, both directly and indirectly, individually and through its agents, servants and employees, the construction site." Count II further alleged that Roszak owed a duty of ordinary care to Hastings and others on the premises and that Roszak had breached that duty in the various ways described above in count I. Both counts I and II conclude with the following assertion: "That as a direct and proximate result of the negligence of [Roszak], [Hastings] was struck by a load of structural steel, suffering serious and permanent personal and pecuniary injuries."

The contract between Roszak and Rockford called for Rockford to add Roszak as an additional insured to its commercial general liability policy, which Pekin has issued to Rockford as named insured. Rockford's policy contains the following endorsement amending the language identifying who is insured under the policy:

> "**Who Is An Insured (Section II)** is amended to include as an insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability incurred solely as a result of some act or omission of the named insured and not for its own independent

4

negligence or statutory violation."

Roszak tendered the complaint in the Hastings action to Pekin, claiming that it was an additional insured under Rockford's policy, and asked Pekin to defend it in the Hastings action. Pekin declined the tender and sought a declaratory judgment claiming that it had no duty to defend Roszak in the Hastings action. Pekin and Roszak filed cross-motions for summary judgment. The trial court denied Pekin's motion and granted Roszak's motion, finding that Pekin owed Roszak a duty to defend in the Hastings action. Pekin then filed this timely appeal.

ANALYSIS

Pekin argues on appeal that it owes Roszak no duty to defend in the Hastings action because the facts pled in the Hastings complaint do not allege "liability incurred solely as a result of some act or omission of the named insured" as stated in the additional insured endorsement to Rockford's general commercial liability policy. Roszak maintains that the Hastings complaint raises the possibility of coverage and thus that Pekin owes it a duty to defend.

The construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court to decide and are appropriate subjects for disposition by way of summary judgment. *Steadfast Insurance Co. v. Caremark RX, Inc.*, 359 Ill. App. 3d 749, 755 (2005), quoting *Crum & Froster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391 (1993). Summary judgment is appropriate where the pleadings, depositions, and admissions on file, together with any affidavits and exhibits, when viewed in the light most favorable to the nonmoving party, indicate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2008). We

5

review a circuit court's decision on a motion for summary judgment *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). "Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt." *Outboard Marine Corp.*, 154 Ill. 2d at 102.

Our supreme court has laid out the following framework through which we should analyze issues concerning an insurer's duty to defend:

> "To determine an insurer's duty to defend its insured, the court must look to the allegations of the underlying complaints. If the underlying complaints allege facts within or *potentially* within policy coverage, the insurer is obliged to defend its insured even if the allegations are groundless, false, or fraudulent. [Citation.] An insurer may not justifiably refuse to defend an action against its insured unless it is *clear* from the face of the underlying complaints that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage. [Citation.] Moreover, if the underlying complaints allege several theories of recovery against the insured, the duty to defend arises even if only one such theory is within the potential coverage of the policy. [Citation.]
>
> The underlying complaints and the insurance policies must be liberally construed in favor of the insured. Where a policy provision is clear and unambiguous, its language must be taken in its 'plain, ordinary and popular sense.' [Citation.] A provision is ambiguous if it is subject to more than one reasonable interpretation. [Citation.] All doubts and

6

ambiguities must be resolved in favor of the insured. [Citations.]"

(Emphasis in original.) *United States Fidelity & Guaranty Co. v. Wilkin*

*Insulation Co.*, 144 Ill. 2d 64, 73-74 (1991).

See also *Outboard Marine Corp.*, 154 Ill. 2d at 125. In addition, the alleged conduct, rather than the labeling of the claim in the complaint, determines whether the insurer has a duty to defend. *Steadfast Insurance*, 359 Ill. App. 3d at 755-56. The insurer has the burden of establishing that the facts alleged in the complaint do not trigger a duty to defend. *Allstate Insurance Co. v. Amato*, 372 Ill. App. 3d 139, 146 (2007).

We have previously considered two cases involving additional insured endorsements substantially similar to the one in the case at bar and found that the additional insured endorsement did not cover negligence directly alleged against an additional insured. *Pekin Insurance Co. v. United Parcel Service, Inc.*, 381 Ill. App. 3d 98, 104 (2008) (*UPS*); *Pekin Insurance Co. v. Beu*, 376 Ill. App. 3d 294, 297 (2007). In *UPS*, Ron Aggen filed a complaint alleging that he was working as a machinery installer for Swan Machinery Installation, Inc., (Swan) which United Parcel Service, Inc. (UPS), had contracted with to provide certain conveyor repair work at one of its facilities. *UPS*, 381 Ill. App. 3d at 99-100. According to the complaint, in the course of his work for Swan at the UPS facility, the ladder on which Aggen was standing malfunctioned, causing Aggen to fall and sustain serious injuries. *UPS*, 381 Ill. App. 3d at 99. After Aggen filed suit against UPS, among others, UPS tendered the complaint to Pekin, claiming that it was covered as an additional insured under Swan's insurance policy with Pekin. *UPS*, 381 Ill. App. 3d at 100. Pekin denied the tender and filed for a declaratory judgment claiming that it owed Swan no duty to defend. *UPS,* 381 Ill. App. 3d at 98-99. The trial court

7

granted summary judgment in favor of UPS and Pekin appealed that ruling. *UPS*, 381 Ill. App. 3d at 101.

On review*,* we were asked to construe an additional insured endorsement containing the following language: " ' "Such person or organization is an additional insured only with respect to liability incurred solely as a result of some act or omission of the named insured and not for its own independent negligence or statutory violation." ' " *UPS*, 381 Ill. App. 3d at 103-04, quoting *Beu*, 376 Ill. App. 3d at 294-95 (the same endorsement that is found in the case at bar). Justice McBride authored the majority decision, which reasoned that "[s]ince the Aggen complaint raised a direct claim of negligence against UPS, Swan cannot be solely responsible and Pekin has no duty to defend." *UPS*, 381 Ill. App. 3d at 102. The Aggen complaint employed a theory of joint and several liability, alleging that it was the negligence of " 'Defendants, and each of them' " that caused Aggen's injuries. (Emphasis omitted.) *UPS*, 381 Ill. App. 3d at 104. Thus, we reasoned, because the underlying complaint directly alleged that UPS was negligent based on its own acts or omissions, the complaint did not allege that UPS was negligent " 'solely as a result of some act or omission' " of Swan, the named insured. *UPS*, 381 Ill. App. 3d at 104, quoting *Beu*, 376 Ill. App. 3d at 297. We found that the Pekin policy did not cover negligence directly alleged against an additional insured. *UPS*, 381 Ill. App. 3d at 104.

In *Beu*, Roger Beu had contracted with Castle Builders (Castle) to construct a residence in Woodstock, Illinois. *Beu*, 376 Ill. App. 3d 294. As part of that contract, Castle added Beu as an additional insured on its insurance policy with Pekin. *Beu*, 376 Ill. App. 3d 294. Walter Hall, one of the employees of a subcontractor, fell and sustained injuries while working on the construction site. *Beu*, 376 Ill. App. 3d at 295. Hall filed a negligence action naming Beu, among

8

others, as a defendant. *Beu*, 376 Ill. App. 3d at 295. Beu tendered his defense to Pekin, claiming that he was covered as an additional insured under Castle's policy. *Beu*, 376 Ill. App. 3d at 296. Pekin refused tender and filed a declaratory judgment action claiming that it owed Beu no duty to defend. *Beu*, 376 Ill. App. 3d at 296.

On appeal, we were asked to construe an additional insured endorsement, as we have here, that read, in part: " 'Such person or organization is an additional insured only with respect to liability incurred solely as a result of some act or omission of the named insured and not for its own independent negligence or statutory violation.' " *Beu*, 376 Ill. App. 3d at 294-95. As in *UPS*, Hall's underlying complaint alleged that the negligence of " 'Defendants, and each of them' " caused his injuries. *Beu*, 376 Ill. App. 3d at 295. We found that because Hall had alleged direct negligence on the part of Beu, the complaint did not allege negligence " 'solely as a result of some act or omission of the named insured' " and thus was not covered by the additional insured endorsement. *Beu*, 376 Ill. App. 3d at 297.

We continue to agree with our earlier decisions finding that direct allegations of negligence against an additional insured do not fall within coverage granted " 'only with respect to liability incurred solely as a result of some act or omission of the named insured and not for [the additional insured's] own independent negligence or statutory violation.' " *Beu*, 367 Ill. App. 3d at 297.

In the instant case, as in *UPS* and *Beu*, the underlying complaint directly alleges negligence on the part of Roszak, the additional insured. As noted, counts I and II of the Hastings complaint allege that "as a direct and proximate result of the negligence of [Roszak], plaintiff was struck by a load of structural steel." The additional insured endorsement does not cover these claims

9

because a direct allegation of negligence on the part of the additional insured is not "solely as a result of some act or omission of the named insured." Instead, the complaint alleges the injury was caused by the additional insured's "own independent negligence," which the endorsement expressly does not cover.

Roszak asks us to disregard our decisions in *UPS* and *Beu* and instead follow our earlier decision in *Illinois Emcasco Insurance Co. v. Northwestern National Casualty Co.*, 337 Ill. App. 3d 356 (2003), upon which the trial court relied in its ruling in the instant case, and find that the complaint raises a *possibility* of coverage. We agree with Roszak that an "insurer may refuse to defend only when the complaint, considered in light of the insurance policy, precludes the possibility of coverage." *Emcasco*, 337 Ill. App. 3d at 358. However, we believe that the facts of the instant case preclude the possibility of coverage and that the facts of *Emcasco* distinguish it from the case at bar.

In *Emcasco*, Balthazar Rodriguez sued the general contractor on a construction project, R.A. Faganel Builders (Faganel), after he fell while working on the construction site. *Emcasco*, 337 Ill. App. 3d at 357. Faganel tendered its defense to Northwestern National Casualty Co. (Northwestern), which had issued a policy to Kol Painting (Kol) naming Faganel as an additional insured on the policy. *Emcasco*, 337 Ill. App. 3d at 357. The policy covered Faganel " 'only with respect to liability imputed to [Faganel] as a result of negligent acts or omissions of [Kol].' " *Emcasco*, 337 Ill. App. 3d at 358. This coverage for imputed liability is much broader than the coverage provided by Pekin in the case at bar. Rodriguez's complaint, which later added Kol as a codefendant, alleged that both Faganel and Kol, " 'through [their] duly authorized agents' " violated their duties to maintain a safe worksite. *Emcasco*, 337 Ill. App. 3d at 358. On its face,

10

the Rodriguez complaint did not establish whether or not Kol would qualify as one of Faganel's " 'duly authorized agents.' " *Emcasco*, 337 Ill. App. 3d at 358. Northwestern refused Faganel's tender of its defense on the grounds that it was " 'unable to accept this tender of defense due to many unknown facts.' " *Emcasco*, 337 Ill. App. 3d at 359. However, Northwestern never filed for a declaratory judgment to determine whether it owed Faganel a duty to defend. *Emcasco*, 337 Ill. App. 3d at 359. Emcasco, Faganel's general liability insurer, undertook Faganel's defense and then filed for a declaratory judgment claiming that Northwestern had breached its insurance contract with Kol by refusing to defend Faganel. *Emcasco*, 337 Ill. App. 3d at 359. The trial court found that while " 'the liability of [Faganel] may result from negligence of [Kol] within the meaning of this additional insured endorsement,' " " 'realistically [the] pleadings do not fairly represent the policy.' " *Emcasco*, 337 Ill. App. 3d at 359.

In part because the trial court had noted the possibility of imputed liability, we found that Northwestern owed Faganel a duty to defend. *Emcasco*, 337 Ill. App. 3d at 362. Northwestern argued on appeal that certain documents, other than the Rodriguez complaint, established that Kol was an independent contractor and thus not one of Faganel's " 'duly authorized agents.' " *Emcasco*, 337 Ill. App. 3d at 362. Therefore, Northwestern argued, Kol's liability could not be imputed to Faganel and thus Northwestern did not owe Faganel a duty to defend. *Emcasco*, 337 Ill. App. 3d at 362. However, we found that Northwestern was estopped from raising any policy defenses to Faganel's coverage because it had failed to bring a declaratory judgment action or defend Faganel under a reservation of rights. *Emcasco*, 337 Ill. App. 3d at 362.

As in *Emasco*, the Hastings complaint, on its face, does not establish that Rockford is one of Roszak's "agents, servants and employees." However, unlike the insurer in *Emcasco*, Pekin is

not estopped from raising policy defenses to coverage. Furthermore, we believe Roszak's reading of the holding in *Emcasco* goes too far. Justice McNulty wrote that "an insurer has a duty to defend its insured against any complaint that leaves open the possibility of coverage." *Emcasco*, 337 Ill. App. 3d at 358. Roszak asks us to read this language as indicating that so long as a complaint does not preclude or foreclose the possibility of a theory of liability that is covered by an insurance policy, the insurer would owe a duty to defend. While we must construe the complaint liberally in favor of the insured (*Outboard Marine Corp.*, 154 Ill. 2d at 125), we are still tied to the words of the complaint. We cannot read into the complaint something that is not there. Instead, we must look to what the underlying plaintiff did allege and ascertain whether those allegations contain facts supporting the elements of a theory of liability that is covered by Pekin's policy. Justice McNulty clearly stated that such a theory must be "supported by the complaint." *Emcasco*, 337 Ill. App. 3d at 361. A theory cannot be "supported by the complaint" if the complaint does not allege facts to support the elements of that theory. *Emcasco*, 337 Ill. App. 3d at 361. Thus, if the allegations in the Hastings complaint include sufficient facts to leave open the possibility of coverage, then Pekin owes Roszak a duty to defend. *Emcasco*, 337 Ill. App. 3d at 358. However, we will not read into the complaint facts that are not there.

In the case at bar, the trial court found that "the Hastings complaint on its face admits of the possibility that Roszak could be found liable under Count II for the acts of its 'agent' Rockford." As noted, count II, titled "Premises Liability," alleges that Roszak "possessed, operated, managed, maintained and controlled or had a duty to possess, operate, manage, maintain and control, both directly and indirectly, individually and through its agents, servants and employees, the construction site." Nowhere in count II does the complaint allege an agency

12

relationship between Roszak and Rockford. In addition, neither count IX nor count X against Rockford alleges an agency relationship between Roszak and Rockford. The complaint merely states that Roszak was the general contractor on the site and that Rockford was the steel fabricator. It also alleges that both Roszak and Rockford "owned and/or [were] in charge of the erection and construction ongoing" at the site. Furthermore, count II of the complaint alleges "[t]hat as a direct and proximate result of the negligence of [Roszak], [Hastings] was struck by a load of structural steel, suffering serious and permanent personal and pecuniary injuries." Thus, count II alleges direct negligence on the part of Roszak; it does not allege that Roszak was vicariously liable for the negligent acts or omissions of another.

We do not believe that the facts alleged in this complaint allege an agency relationship between Roszak and Rockford. Typically when a contractor engages a subcontractor to perform work on a construction site, the subcontractor is an independent contractor. Thus, without any allegations in the complaint suggesting otherwise, we must infer that Rockford was acting as an independent contractor.

Generally, "one who employs an independent contractor is not liable for the acts or omissions of the latter." *Martens v. MCL Construction Corp.*, 347 Ill. App. 3d 303, 313 (2004). The policy rationale underlying this rule is that a principal does not typically monitor and direct the operative details of an independent contractor's work, and thus is ill-equipped to prevent negligent performance by the independent contractor. *Martens*, 347 Ill. App. 3d at 313-14.

Section 414 of the Restatement (Second) of Torts provides an exception to this general rule: "One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer

13

owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care." Restatement (Second) of Torts §414, at 387 (1965). In other words, a general contractor who engages a subcontractor would have to retain control of some part of the subcontractor's work in order to be subject to vicarious liability for the subcontractor's actions. Comment *a* to section 414 provides further guidance on this issue:

> "If the employer of an independent contractor retains control over the operative detail of doing any part of the work, he is subject to liability for the negligence of the employees of the contractor engaged therein, under the rules of that part of the law of Agency which deals with the relation of master and servant. The employer may, however, retain a control less than that which is necessary to subject him to liability as master. He may retain only the power to direct the order in which the work shall be done, or to forbid its being done in a manner likely to be dangerous to himself or others. Such a supervisory control may not subject him to liability under the principles of Agency, but he may be liable under the rule stated in this Section unless he exercises his supervisory control with reasonable care so as to prevent the work which he has ordered to be done from causing injury to others." Restatement (Second) of Torts §414, Comment *a*, at 387 (1965).

As we have previously stated, "the general contractor, by retaining control over the operative details of its subcontractor's work, may become vicariously liable for the subcontractor's negligence; alternatively, even in the absence of such control, the general contractor may be

14

directly liable for not exercising his supervisory control with reasonable care." *Cochran v. George Sollitt Construction Co.,* 358 Ill. App. 3d 865, 874 (2005). Thus, section 414 provides for two mutually exclusive theories of liability against a general contractor, depending on the amount of control the general contractor retains over the details of the work of subcontractor. See *Cochran*, 358 Ill. App. 3d at 874.

We note that none of the cases cited by Roszak concern whether a general contractor or other employer had retained sufficient control over the actions of an independent contractor to cause it to become vicariously liable for the independent contractor's negligence. Instead, these cases focus only on whether a principal is liable for the acts of his agent, and ignore the issue of an employer's liability for the acts of an independent contractor. See *Horwitz v. Holabird & Root*, 212 Ill. 2d 1 (2004); *Woods v. Cole*, 181 Ill. 2d 512 (1998); *City of Chicago v. Roppolo*, 113 Ill. App. 3d 602 (1983). Yet nothing in the Hastings complaint indicates that Rockford was not an independent contractor, and so the question we must consider is whether the complaint alleges that Roszak retained sufficient control over the details of Rockford's work that it could be held vicariously liable.

Comment *c* to section 414 of the Restatement explains what must be established in order for a general contractor to be vicariously liable for the acts of an independent contractor:

> "In order for the rule stated in this Section to apply, the employer
> must have retained at least some degree of control over the manner in
> which the work is done. It is not enough that he has merely a general
> right to order the work stopped or resumed, to inspect its progress or to
> receive reports, to make suggestions or recommendations which need not

15

necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way."

Restatement (Second) of Torts §414, Comment *c*, at 387 (1965).

The Hastings complaint alleges that Roszak had the general rights of a supervisor but includes no allegations that Roszak retained the right to supervise the details of Rockford's work. According to the complaint, Roszak "participated in coordinating the work being done and designated various work methods, maintained and checked work progress and participated in the scheduling of the work and inspection of the work. In addition *** [Roszak] had the authority to stop the work, refuse the work and materials and order changes in the work***." These allegations appear to describe the general duties of a supervisor and not retained control over operative details. While " '[t]he question of coverage should not hinge on the draftsmanship skills or whims of the plaintiff in the underlying action' " (*UPS*, 381 Ill. App. 3d at 106, quoting *International Insurance Co. v. Rollprint Packaging Products, Inc.*, 312 Ill. App. 3d 998, 1007 (2000)), nothing in the Hastings complaint indicates that Roszak retained sufficient control over the details of Rockford's work so as to be vicariously liable for the acts or omissions of Rockford. Therefore, we read counts I and II of the Hastings complaint as alleging direct liability against Roszak, which is not liability " 'incurred solely as a result of some act or omission of the named insured' " as required for coverage. *UPS*, 381 Ill. App. 3d at 104, quoting *Beu*, 376 Ill. App. 3d at 297.

Roszak asks us to distinguish the instant case from *UPS* and its predecessors because the underlying complaints in those cases employed a theory of joint and several liability based on the negligent actions of "defendants, *and each of them*." We do not believe that a plaintiff's choice to assert joint and several liability as opposed to several liability has any effect on whether the complaint alleges facts that would trigger liability for an additional insured " 'solely as a result of some act or omission of the named insured.' " *Beu*, 376 Ill. App. 3d at 297. Instead, the key point and focus is that the underlying complaints in each of those cases allege independent negligence on the part of the additional insured. *UPS*, 381 Ill. App. 3d at 104; *Beu*, 376 Ill. App. 3d at 297; *Village of Hoffman Estates v. Cincinnati Insurance Co.*, 283 Ill. App. 3d 1011, 1014 (1996) (finding that an underlying complaint was not based solely on the acts or omissions of the named insured when it alleged liability directly against the additional insured).

The Second District of this court recently considered a case concerning a substantially similar version of the additional insured endorsement in the instant case. *Pekin Insurance Co. v. Hallmark Homes, L.L.C.*, 392 Ill. App. 3d 589 (2009). In *Hallmark Homes,* an employee of a subcontractor on a construction project sued both the general contractor and the subcontractor, among others, alleging negligence and premises liability. *Hallmark Homes*, 392 Ill. App. 3d at 591-92. The general contractor tendered its defense to Pekin, claiming that it was covered as an additional insured on the subcontractor's insurance policy with Pekin. *Hallmark Homes*, 392 Ill. App. 3d at 592. Relying on our earlier decision in *Cochran*, our Second District read the allegations in the underlying complaint that the general contractor " 'participated in coordinating the work being done and designated various work methods, maintained and checked work progress and participated in [the] scheduling of the work and the inspection of the work' " as

17

establishing that the general contractor had retained control over the operative details of the subcontractor's work. *Hallmark Homes*, 392 Ill. App. 3d at 594, citing *Cochran*, 358 Ill. App. 3d at 874. With this finding, our Second District found that the underlying complaint alleged that the general contractor was vicariously liable for the negligence of the subcontractor under section 414 of the Restatement. *Hallmark Homes*, 392 Ill. App. 3d at 594; Restatement (Second) of Torts §414 (1965). We do not agree with this reading of *Cochran* and section 414 of the Restatement. Comment *a* to section 414 indicates a general contractor that retains the power to coordinate the order in which work is done and to stop work that is performed dangerously, as in the complaints in both *Hallmark Homes* and the instant case, does not retain sufficient control so as to be vicariously liable for the subcontractor's negligence. Restatement (Second) of Torts §414, Comment *a* (1965).

Finally, Roszak raises the specter of illusory coverage in the case at bar, arguing that if we were to find that the additional insured endorsement did not provide coverage in the underlying action, then the coverage provided would be a nullity. We find this argument unpersuasive. Essentially, the instant case involves one theory of liability arising out of section 414 of the Restatement and the additional insured endorsement provides coverage for the other. See Restatement (Second) of Torts §414 (1965). While the endorsement does not cover situations of the additional insured's own negligence, it does cover situations where the additional insured retained sufficient control over the operative details of the named insured's work such so as to become vicariously liable for the acts or omissions of the named insured. See Restatement (Second) of Torts §414, Comment *a* (1965). If we were to adopt Roszak's construction of the additional insured endorsement in the case at bar, we would be making a new contract of

18

insurance for the parties—something which we cannot do. *Stark v. Illinois Emcasco Insurance Co.*, 373 Ill. App. 3d 804, 811 (2007).

CONCLUSION

Accordingly, for the foregoing reasons, we reverse the judgment of the circuit court of Cook County granting summary judgment to defendant Roszak and remand and order that the circuit court enter summary judgment in favor of plaintiff Pekin. We find that plaintiff Pekin does not owe Roszak a duty to defend in the Hastings action.

Reversed and remanded.

CAHILL, P.J., and J. GORDON, J., concur.