PEKIN INSURANCE COMPANY, Plaintiff-Appellant, v. HALLMARK HOMES, L.L.C., *et al.*, Defendants-Appellees.

Second District    No. 2—08—0380

Opinion filed June 23, 2009.

Robert Marc Chemers, Darryl L. Awick, and Scott L. Howie, all of Pretzel & Stouffer, Chtrd., of Chicago, for appellant.

Bruce W. Lyon and Kathleen M. Waitzman, both of LaBarge, Campbell & Lyon, LLC, of Chicago, for appellee Hallmark Homes, L.L.C.

JUSTICE SCHOSTOK delivered the opinion of the court:

The plaintiff, Pekin Insurance Company, filed a declaratory judgment action against the defendants, Hallmark Homes, L.L.C., and Michael Bremer. Pekin sought a declaration that it was not obliged to defend Hallmark Homes, which was an "additional insured" named on a policy that Pekin issued to another company, against a suit filed by Bremer. On April 21, 2008, the trial court entered an amended order granting judgment in favor of Hallmark Homes. Pekin appeals, and we affirm.

Hallmark Homes was involved in a construction project. One of the other entities involved in the project, MC Builders, was the named

insured under an insurance policy issued by Pekin. At Hallmark Homes' request, MC Builders obtained a certificate of insurance listing Hallmark Homes as an "additional insured" on its policy. The policy included an endorsement that read as follows:

"1. **Who is An Additional Insured (Section II)** is amended to include as an insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability incurred solely as a result of some act or omission of the named insured and not for its own independent negligence or statutory violation."

Bremer, an employee of a subcontractor on the project, was injured on the construction site and sued, among others, Hallmark Homes and MC Builders. The first two counts of the amended complaint were directed against Hallmark Homes and sought to hold Hallmark Homes liable under two theories of negligence, set out in sections 414 and 343 of the Restatement (Second) of Torts (Restatement). Section 414 of the Restatement states as follows:

"One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care." Restatement (Second) of Torts §414, at 387 (1965).

Potential liability under section 414 "commonly arises when a general contractor entrusts work to a subcontractor but superintends the job himself or through a foreman." *Grillo v. Yeager Construction*, 387 Ill. App. 3d 577, 593 (2008), citing Restatement (Second) of Torts §414, Comment *b*, at 387-88 (1965). Depending on the degree of control retained by the general contractor, a section 414 claim may rest on vicarious liability, by which one party is held liable for the negligent acts or omissions of another. *Calderon v. Residential Homes of America, Inc.*, 381 Ill. App. 3d 333, 341-42 (2008) (both direct and vicarious liability claims can be advanced under section 414).

The other count directed against Hallmark Homes asserted a theory of premises liability under section 343 of the Restatement, under which a person who owns, possesses, or otherwise has control over land may be liable to someone who is injured on the land, if the first person knew or reasonably should have known of the dangerous condition that caused the injury and should have expected that others would be injured but failed to take adequate safety measures. Restatement (Second) of Torts §343 (1965). The fifth count of Bremer's

amended complaint was directed against MC Builders and also alleged negligence based on premises liability under section 343 of the Restatement. The premises-liability claims against both Hallmark Homes and MC Builders were largely identical, each alleging that the defendant named in the count failed to conduct its construction activities at the site with reasonable care and negligently operated, managed, and controlled the premises in such a manner as to create the dangerous condition that caused Bremer's injury.

Hallmark Homes tendered its defense to Pekin. Pekin sought a declaration of its obligations to Hallmark Homes, filing this action pursuant to the declaratory judgment provision of the Code of Civil Procedure (Code) (735 ILCS 5/2—701 (West 2006)). Hallmark Homes filed an answer and counterclaim for declaratory judgment. On November 5, 2007, Pekin moved for summary judgment. Pekin contended that, because the complaint against Hallmark Homes alleged that Hallmark Homes' own negligence made it liable to Bremer, any possible liability could not be based solely on the negligence of MC Builders, as required by the endorsement. Therefore, Hallmark Homes could not possibly fall within the terms of coverage and Pekin had no duty to defend it. Hallmark Homes responded by noting that two counts of the complaint contained identical allegations against both Hallmark Homes (count II) and MC Builders (count V), alleging that each party had violated the duty imposed by section 343 of the Restatement. Hallmark Homes argued that, if MC Builders created a dangerous condition that caused Bremer's injury, Hallmark Homes' liability could rest solely on the negligent acts of MC Builders, thereby triggering Pekin's duty to defend Hallmark Homes. The trial court denied Pekin's motion for summary judgment and entered judgment in favor of Hallmark Homes instead. Pekin filed a timely notice of appeal.

## Standard of Review

■ Before turning to the merits of the appeal, we must resolve a dispute between the parties regarding the proper standard of review to be applied. Hallmark Homes contends that the principle is "deeply rooted in Illinois case law" that the grant or denial of declaratory judgment is a matter of the trial court's discretion, so the decision cannot be reversed absent an abuse of that discretion. Pekin states that the case law is unclear on this point, with different cases stating that a declaratory judgment receives review ranging from the deferential standard of "abuse of discretion" to the nondeferential *de novo* standard. Unfortunately, Pekin is correct that the case law regarding the proper standard of review for declaratory judgments is full of contradictory statements and is "disturbingly rich in *** misap-

plications of sound precedent." *In re Marriage of Rife*, 376 Ill. App. 3d 1050, 1060 (2007). In *Rife*, we examined this issue at length and clarified that the proper standard of review to be applied to declaratory judgments depends on the nature of the proceedings in the trial court:

> "[W]hether appellate review of trial courts' decisions is deferential is a function of the division of labor between trial courts and courts of review. Courts of review accord deference to those trial court decisions that are within the special competence of the trial courts [such as the admissibility of evidence, credibility determinations, and the weighing of conflicting evidence], and only to those decisions. When we are reviewing a type of decision that the trial court was better qualified to make, we must proceed with due recognition of the trial court's superior vantage point. Otherwise, we must exercise our prerogative to decide the issue without deference to the trial court." *Rife*, 376 Ill. App. 3d at 1058-59.

Thus, " 'to the extent it is not based on factual determinations that are the trial court's province,' " the trial court's decision in a declaratory judgment action is subject to *de novo* review. *Rife*, 376 Ill. App. 3d at 1060, quoting *Inland Land Appreciation Fund, L.P. v. County of Kane*, 344 Ill. App. 3d 720, 724 (2003).

Here, the sole basis for the trial court's declaratory judgment was the legal arguments raised by the parties in the course of supporting or responding to Pekin's motion for summary judgment. No factual determinations were involved. Accordingly, we review the trial court's decision *de novo*. *Rife*, 376 Ill. App. 3d at 1060. Moreover, the interpretation of a contract such as an insurance policy is a purely legal matter subject to *de novo* review. *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 129 (2005). With this standard of review in mind, we turn to the merits of the parties' arguments.

## Analysis

In determining whether an insurer must defend a party that is an additional insured under the policy, the court must compare the allegations of the underlying complaint against the party to the provisions of the policy, liberally construing both in favor of the additional insured party. *State Automobile Mutual Insurance Co. v. Kingsport Development, LLC*, 364 Ill. App. 3d 946, 951 (2006), citing *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 125 (1992).

> "If the underlying complaints allege facts within or *potentially* within policy coverage, the insurer is obliged to defend its insured even if the allegations are groundless, false, or fraudulent. [Citation.] An insurer may not justifiably refuse to defend an action

against its insured unless it is *clear* from the face of the underlying complaints that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage. [Citation.] Moreover, if the underlying complaints allege several theories of recovery against the insured, the duty to defend arises even if only one such theory is within the potential coverage of the policy." (Emphases in original.) *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73 (1991).

In interpreting the terms of the policy, any doubts or ambiguities must be resolved in favor of the insured. *Wilkin*, 144 Ill. 2d at 74. Thus, Pekin is obliged to defend Hallmark Homes if Hallmark Homes' liability to Bremer under either of the counts of the underlying complaint even potentially falls within the terms of the policy.

Bremer's complaint asserts that Hallmark Homes is liable in its role as the general contractor on the site under section 414 of the Restatement. The allegations assert both direct and vicarious liability. For instance, the complaint alleges that Hallmark Homes "participated in coordinating the work being done and designated various work methods, maintained and checked work progress and participated in [the] scheduling of the work and the inspection of the work." These allegations suggest that Hallmark Homes retained control over many of the operative details of its agents' and subcontractors' work, which could subject Hallmark Homes to vicarious liability. See *Cochran v. George Sollitt Construction Co.*, 358 Ill. App. 3d 865, 874 (2005), citing Restatement (Second) of Torts §414, Comment *a*, at 387 (1965). "[A]lternatively, even in the absence of such control, the general contractor may be directly liable for not exercising his supervisory control with reasonable care." *Cochran*, 358 Ill. App. 3d at 874. Here, the complaint alleges that Hallmark Homes "had a duty to exercise reasonable care in its control of the work," an allegation that clearly asserts direct liability.

In addition, the complaint raises identical claims of premises liability under section 343 of the Restatement against both Hallmark Homes and MC Builders. Each of these claims alleges that the party against whom it is directed "possessed, owned, operated and controlled" the structure being built; knew of a dangerous condition on the premises (namely, a work deck littered with debris upon which Bremer landed); and acted or failed to act in such a manner as to cause or contribute to Bremer's injury. It is unclear from the face of the complaint whether these parallel claims are intended to allege that *both* Hallmark Homes and MC Builders, acting independently, negligently permitted a dangerous condition to exist on the premises, thereby causing Bremer's injury, or whether the two claims are pled in

the alternative so as to preserve Bremer's right to recover regardless of which of the two is ultimately found to have been responsible.

■ Under the language of the policy, Hallmark Homes is an additional insured entitled to coverage so long as it is (or potentially could be) liable solely as a result of MC Builders' acts or omissions. See *Wilkin*, 144 Ill. 2d at 73. In this case, that standard is met. Hallmark Homes is potentially vicariously liable solely on the basis of the acts or omissions of MC Builders. Inasmuch as Hallmark Homes was the general contractor on the project, with responsibility for overall supervision of the site, under section 414 of the Restatement it is possible that Hallmark Homes could be vicariously liable for the negligence of MC Builders. This could result if, for instance, MC Builders caused or knew of the dangerous condition that caused Bremer's injury, as alleged in the premises-liability claim against MC Builders, but Hallmark Homes had no knowledge of the condition. As at least one of the theories of negligence alleged against Hallmark Homes could rest solely on the acts or omissions of the named insured, Pekin has a duty to defend Hallmark Homes against all of the claims raised against it by Bremer. See *Wilkin*, 144 Ill. 2d at 73.

Pekin argues that it need not defend Hallmark Homes unless the allegations of the underlying complaint specifically identify a scenario in which Hallmark Homes' liability rests solely on MC Builders' negligence. Pekin points out that the complaint: alleges that Hallmark Homes was itself negligent; does not identify MC Builders as a subcontractor; and does not specifically assert that Hallmark Homes' liability rests on the negligence of MC Builders. However, the test is not whether the complaint directly alleges facts that show that the claim is within the coverage provided by the policy. Rather, the insurer owes a duty to defend unless "the insurance cannot possibly cover the liability arising from the facts alleged" and the terms of the policy clearly preclude coverage under all of the facts consistent with the allegations. *Illinois Emcasco Insurance Co. v. Northwestern National Casualty Co.*, 337 Ill. App. 3d 356, 361 (2003); see also *Kingsport*, 364 Ill. App. 3d at 951. As we have discussed, a fair reading of the complaint shows that Bremer has alleged a vicarious liability theory against Hallmark Homes and that MC Builders' own negligence caused his injury. We must construe the complaint liberally in determining whether its allegations "allege facts within or *potentially* within policy coverage." (Emphasis in original.) *Wilkin*, 144 Ill. 2d at 73. Because the allegations of the complaint, construed liberally, comprise at least one claim that is within the terms of Pekin's policy coverage for additional insureds, liability under that complaint is "potentially within" the policy and Pekin has a duty to defend Hallmark Homes.

Pekin argues that a "whole host of decisions" holds that, where a complaint alleges that the additional insured was itself negligent, the complaint is not within the scope of the insurance provided to additional insureds, citing *Pekin Insurance Co. v. United Parcel Service, Inc.*, 381 Ill. App. 3d 98 (2008); *Pekin Insurance Co. v. Beu*, 376 Ill. App. 3d 294 (2007), *American Country Insurance Co. v. James McHugh Construction Co.*, 344 Ill. App. 3d 960 (2003), *Tanns v. Ben A. Borenstein & Co.*, 293 Ill. App. 3d 582 (1997), and *Village of Hoffman Estates v. Cincinnati Insurance Co.*, 283 Ill. App. 3d 1011 (1996). We find this argument unpersuasive for two reasons. First, as a general matter, each coverage case is dependent on its own unique facts, which include the exact terms of the policy and the allegations of the complaint in the underlying case. As we have noted in the past, cases involving different insurance provisions or different allegations are distinguishable. See *Kingsport*, 364 Ill. App. 3d at 958-59 (distinguishing cases). We acknowledge that the language of the policy was essentially the same in this case and in the first two cases cited above, *United Parcel Service* and *Beu*, both of which involved Pekin insurance policies. However, we disagree with the result reached in those cases, for the second reason: we believe they rest on an unduly restrictive application of the principles laid out by the supreme court in *Outboard Marine*, 154 Ill. 2d at 125-26, and *Wilkin*, 144 Ill. 2d at 73-74.

As we have noted, both *Outboard Marine* and *Wilkin* command courts to interpret the allegations of the underlying complaints and the language of the insurance polices liberally when determining whether insurers owe a duty to defend. Yet neither *United Parcel Service* nor *Beu* follows this admonition. Rather, as Pekin concedes, these cases instead "relied heavily" on *Village of Hoffman Estates*. In all three of these cases, the court based its finding that there was no duty to defend on the fact that the underlying complaint did not explicitly allege that the additional insured was liable *solely* for the acts or omissions of the named insured. *United Parcel Service*, 381 Ill. App. 3d at 104; *Beu*, 376 Ill. App. 3d at 297; *Village of Hoffman Estates*, 283 Ill. App. 3d at 1014. Instead, the complaint in each case recited that "the defendants, and each of them" was liable for the plaintiff's injury. Those cases held that this language meant that no one defendant (including the named insured) could be solely liable under the complaint. That language is not used in the amended complaint at issue in this case, and thus *United Parcel Service*, *Beu*, and *Village of Hoffman Estates* are distinguishable on their face. Even if those cases were applicable, however, we believe that their reliance on this language is misplaced. The phrase, "the defendants, and each of them," was a bit of boilerplate commonly used by plaintiffs in an at-

tempt to assert all possible bases for liability—both joint wrongdoing by several defendants together, and individual wrongdoing by "each of them." Nothing about the phrase, which also served as a reference to joint and several liability (see *Village of Hoffman Estates*, 283 Ill. App. 3d at 1014), foreclosed the possibility of any one defendant being found solely liable under the complaint.

In addition, we believe that the suggestion in *United Parcel Service, Beu*, and *Village of Hoffman Estates* that the complaint must explicitly identify the claim that is within the "additional insured" coverage represents an unduly narrow reading of the applicable test. This approach ignores the supreme court's statements that the duty to defend exists where the facts alleged in the complaint are consistent with liability under the policy, thereby giving rise to at least one scenario in which there would be coverage. See *Outboard Marine*, 154 Ill. 2d at 125-26; *Wilkin*, 144 Ill. 2d at 73-74. We note that other cases decided by the same court reject this narrower approach. In *International Insurance Co. v. Rollprint Packaging Products, Inc.*, 312 Ill. App. 3d 998 (2000), the court held that "the duty to defend does not require that the complaint allege or use language affirmatively bringing the claims within the scope of the policy." *Rollprint*, 312 Ill. App. 3d at 1007. Recognizing that plaintiffs draft their complaints with their own ends in mind, not with the goal of spelling out whether an insurance company has a duty to defend any particular defendant, the court stated that "[t]he question of coverage should not hinge on the draftsmanship skills or whims of the plaintiff in the underlying action." *Rollprint*, 312 Ill. App. 3d at 1007. More recently, the same court noted, after extensive analysis of this issue:

> "The insurer's duty to defend does not depend upon a sufficient suggestion of liability raised in the complaint; instead, the insurer has the duty to defend unless the allegations of the underlying complaint demonstrate that the plaintiff in the underlying suit will not be able to prove the insured liable, under any theory supported by the complaint, without also proving facts that show the loss falls outside the coverage of the insurance policy. [Citations.] The insurer may *** refuse to defend only if the allegations of the underlying complaint preclude any possibility of coverage." *Emcasco*, 337 Ill. App. 3d at 361.

See also *United Parcel Service*, 381 Ill. App. 3d at 109 (McNulty, J., dissenting) (quoting the above passage from *Emcasco*). The same court affirmed its adherence to these principles last year in *American Economy Insurance Co. v. Holabird & Root*, 382 Ill. App. 3d 1017, 1022 (2008). We agree with the reasoning of *Rollprint*, *Emcasco*, and *Holabird & Root*. Accordingly, we reject Pekin's reliance on *United*

*Parcel Service, Beu,* and *Village of Hoffman Estates* and find that, despite the fact that those cases involved similar policy language, the holding of those cases does not control here.

In its appeal, Hallmark Homes also contends that, if it is not covered under the policy as an additional insured, the policy's coverage is illusory and therefore against public policy. As we have held that Pekin does owe Hallmark Homes a duty to defend under the policy, we need not reach this argument. For all of the foregoing reasons, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

ZENOFF, P.J., and McLAREN, J., concur.