FIRST DIVISION
MARCH 31, 2010

No. 1-09-0629

| | | |
|---|---|---|
| THE BOARD OF EDUCATION, PROVISO TOWNSHIP HIGH SCHOOL DISTRICT No. 209, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 05 CH 13996 |
| GREGORY JACKSON, | ) ) ) | The Honorable Richard J. Billik, Jr. |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE PATTI delivered the opinion of the court:

NATURE OF THE CASE AND THE PROCEEDINGS BELOW

Plaintiff, the Board of Education for the Proviso Township High School District No. 209 (the Board),  filed a declaratory judgment action in the circuit court of Cook County, seeking to have its fourth amendment to its superintendent's contract declared null and void because it violated the Illinois School Code (the Code) (105 ILCS 5/10-1 et seq. (West 2004)).  The circuit court held that the Board complied with the relevant provisions of the Code and that defendant, Gregory Jackson, was entitled to compensation pursuant to the amended contract.  The Board appeals the judgment of the circuit court, arguing: (1) the fourth amendment is unenforceable because it failed to enumerate goals with which to measure the superintendent's performance as

required by section 10-23.8 of the Code; (2) defendant failed to meet the previous performance goals established by the Board prior to the fourth amendment, and thus the amendment extending defendant's contract is void; (3) the circuit court's finding that the fourth amendment was valid and enforceable disregards the legislative intent of section 10-23.8 of the Code; and (4) the terms of the fourth amendment improperly bind future boards and is therefore against public policy. For the reasons that follow, we affirm the judgment of the circuit court.

BACKGROUND

The Board is the duly constituted and elected governing body of the Proviso Township High School District that consists of seven board members elected from time to time in consolidated elections pursuant to the Illinois Election Code (10 ILCS 5/1-1 et seq. (West 2004)). On July 17, 2000, the Board entered into a "Superintendent Agreement" (the Agreement) with defendant. Pursuant to the Agreement, defendant was hired and retained to serve as the school superintendent and chief executive officer of District 209 for a three-year term beginning on July 1, 2000, and lasting through June 30, 2003. Paragraph 3 of the Agreement, entitled "Student Performance and Academic Improvement," references section 10-23.8 of the Code and provides:

"Annually, the Superintendent, with the assistance of his administrative team, shall: (1) evaluate student performance, which shall include but not be limited to: student performance on standardized tests such as performance on the Illinois standardized tests, completion of the curriculum, attendance and drop-out rates; (2) review the curriculum and instructional services; and (3) report to the BOARD as to his findings as to (a) student performance and (b) recommendations, if any, for curriculum or instructional changes as a

result of his evaluation of student performance.

The presentation of the report shall constitute the achievement of the goals and indicators of student performance and academic improvement as required by 105 ILCS 5/10-23.8 of the Illinois School Code."

Thereafter, on June 18, 2001, the Board voted to adopt an amendment to the Agreement extending the term of defendant's contract from its original date to July 1, 2005. Subsequently, on August 18, 2003, the Board and defendant entered into a second amendment to the Agreement, which provided for additional compensation and an extension of defendant's contract to and including June 30, 2007. The increased compensation and the term extension were, however, conditioned upon the passing of a tax referendum and the opening of a magnet school. Paragraph 6 of the second amendment provided, in pertinent part:

"It is understood and agreed by the Board and Superintendent that this is a performance based contract linked to student performance and academic improvement within the schools of the School District and all of the performance and improvement goals contained in the Superintendent's Agreement and First Amendment have been met and satisfied. *** The provision contained in Paragraph 3 of the Superintendent's Agreement regarding student performance and academic improvement are hereby ratified and confirmed and included in this Second Amendment."

On December 15, 2003, the Board revisited defendant's contract and asked defendant to present it with indications of his performance for purposes of evaluating him. At trial, the Board members testified, and plaintiff concedes on appeal, that the presentation made by defendant was

3

No. 1-09-0629

"elaborate." Following the presentation, the Board and defendant entered into the third amendment to the Agreement which removed the tax referendum passage contingency and contained the following language:

"It is understood and agreed by the Board and Superintendent that this is a performance based contract linked to student performance and academic improvement within the schools of the School District and all of the performance and improvement goals contained in the Superintendent's Agreement and First Amendment and Second Amendment have been met and satisfied. *** The provision contained in Paragraph 3 of the Superintendent's Agreement regarding student performance and academic improvement are hereby ratified and confirmed and included in this Third Amendment."

The third amendment, however, did not serve to extend the term of defendant's employment.

On November 15, 2004, the Board met again to consider a fourth amendment to the Agreement. Defendant gave another presentation to the Board outlining his achievements as well as his progress in meeting the goals specified in the Agreement and the third amendment. On November 18, 2004, after hearing defendant's presentation, the Board voted four to three to approve the fourth amendment to defendant's contract, which served to extend defendant's term as superintendent to June 30, 2009. The fourth amendment contained the same paragraph as the previous amendments and it stated that all of the goals contained in the first, second and third amendments had been met and satisfied. Moreover, the provisions regarding student performance and academic improvement in paragraph 3 of the Agreement were ratified, confirmed and included in the fourth amendment. The fourth amendment also contained a list of goals, which

4

were attached to the amendment as exhibit A. The Board's procedure in entering into the fourth amendment was consistent with the procedure followed in passing the previous three amendments to the Agreement, except that the previous three amendments were passed by a unanimous vote of the Board.

Ultimately, in July 2005, the Board voted to nullify the fourth amendment to the Agreement and terminated defendant. The Board then filed a declaratory judgment action seeking a judicial finding that the fourth amendment was void and unenforceable because the Agreement did not contain adequate performance and improvement goals as required by section 10-23.8 of the Code (105 ILCS 5/10-23.8 (West 2004)), and thus the fourth amendment, which simply reincorporated the goals outlined in the original Agreement, was null and void. The Board subsequently filed an amended complaint in which it asserted an additional basis for the invalidity of the fourth amendment. Specifically, the Board contended that the fourth amendment was also unenforceable because the Board had not deliberated for a sufficient period of time prior to passing the fourth amendment.

Thereafter, the parties filed cross-motions for summary judgment contesting the validity of the fourth amendment. After reviewing the parties' cross-motions for summary judgment, the circuit court rejected the Board's argument that the fourth amendment was invalid because the Board did not deliberate long enough before voting in favor of the amendment. The court further found that the initial Agreement, as well as the first, second, and third amendments were approved in accordance with the applicable provision of the Code. The circuit court, however, concluded that there was a genuine issue of material fact as to whether "the goals and indicators of student

performance and academic improvement contained in the Third Amendment, a multi-year, performance-based agreement, were met and satisfied at the time the board approved the fourth amendment on November 15, 2004 in accordance with the statutory authority set forth in 105 ILCS 5/10-23.8." Accordingly, the cause proceeded to a bench trial to resolve this issue of fact and determine the enforceability of the fourth amendment.

At trial, Board members provided testimony about the terms of the Agreement, the amendments to the Agreement, defendant's performance, their expectations of the superintendent, as well as the process by which the Board hired and subsequently terminated defendant. Gary Marine, a member of the Board during the passage of the third and fourth amendments, testified that the evaluation process followed by the Board when it negotiated the fourth amendment did not differ from the process it employed when it approved the third amendment. Michael Carlson, a former Board member, testified that defendant gave a presentation, as he usually did, during consideration of the fourth amendment. Specifically, defendant discussed student curriculum, test scores, attendance and drop-out rates and how those issues related to the Board's initiatives. Carlson further testified that the manner in which the Board contemplated the fourth amendment was not different from the manner in which it decided the first, second and third amendments. Imoni Baxter, a Board member and kindergarten teacher in the Proviso School District, testified that she did not see a difference in the way the fourth amendment was decided relative to the other amendments. Moreover, she recalled "a lot of discussion amongst" the Board members in finding that the goals in the third amendment had been met. Theresa Kelly, a member of the Board throughout defendant's tenure as superintendent, also testified that the Board followed a

consistent practice in approving the amendments to the Agreement, including the fourth amendment.

Prior to the approval of the fourth amendment, no objection was made by any Board member regarding the procedure it employed with respect to the fourth amendment or defendant's fulfillment of his obligations under the Agreement. Shirley Madlock, a Board member, testified that although she did not vote in favor of the fourth amendment to Agreement, she did not object to the presentation given by defendant and did not recall anyone else taking issue with the same. Madlock further agreed that it would be reasonable for the Board to conclude that defendant was meeting his goals by providing the Board with programs that would be implemented in the future. Also, the four Board members who voted in favor of the fourth amendment testified that defendant satisfied all of the goals outlined in the Agreement as well as the amendments thereto. Had defendant failed to satisfy those goals, those Board members would not have voted in favor of the fourth amendment and extended defendant's term as superintendent.

Prior to approving the third amendment to the Agreement, defendant presented a comprehensive plan for reorganizing the school district. The plan included the creation and implementation of a freshman high school campus, small learning communities as well as summer and evening school programs. Defendant had not previously prepared such extensive presentations for the Board because a comprehensive overhaul of the district had not been contemplated prior to the third amendment. The amount of work required to present such an overhaul of the district, including curriculum changes, was significant. The information submitted

to the Board concerning the goals and achievement of the overhaul pertained to curriculum, continuing education, and instruction and standardized test scores through 2010.

The Board members who voted against the fourth amendment testified that their opposition to the fourth amendment was not due to defendant's failure to satisfy the goals set forth in the Agreement or in the previous amendments. Rather, their dissension was based on the lack of actual test scores as well as the belief that an extension of defendant's tenure as superintendent was unnecessary at that particular time. Board member Marine testified that no Board member objected to the fourth amendment on the grounds that defendant was not properly evaluated or that he had not properly performed his duties.

The testimony at trial revealed that no specific student test score outcome was sought by the Board. Instead, Board members were simply looking for defendant to create an environment where test scores could increase. Board member Carlson testified that no "hard numbers" were required, and Baxter similarly stated that the Board was looking for "moves to address test scores, not the scores themselves." There was further testimony that defendant was meeting the goals through his efforts. The Board members who voted to approve the fourth amendment testified that consistency and continuity within the school district was important in their consideration of the amendment. Marine stated that the Board could not wait until the end of defendant's contract to renew his employment because it was concerned that he could be hired by another school district due to his exceptional qualifications. It was also noted at trial that the Board was concerned with "locking up" a superintendent because the individual in that position needs to make plans for several years in advance. The evidence established that the District

employed four superintendents in a period of less than five years following defendant's termination.

Defendant also provided testimony about the fourth amendment to the Agreement and suggested that Board members Marine and Kelly arranged to have the amendment placed on the agenda for the November 15, 2004, Board meeting. Defendant indicated that he desired to have his contract with the District extended and that he would have sought alternative employment if he was unsuccessful in obtaining an extension. He testified that during the session when the fourth amendment was considered, there was a discussion of his accomplishments and the goals for the District. There was also a discussion about student test scores and defendant took the position that those scores had not fallen; however, the test scores themselves were not available at the time of the November 15, 2004, Board meeting. Following the adoption of the fourth amendment to the Agreement, defendant continued working through July 2005, until he was locked out of his office and terminated.

Following the trial, the circuit court rejected the Board's argument that the fourth amendment to the Agreement was void and unenforceable. In a detailed written disposition, the circuit court found that the Board had set specific goals to measure defendant's performance. Moreover, there was evidence that the Board members voting to approve the fourth amendment did measure defendant's performance and effectiveness and found his performance as superintendent satisfactory before implementing the amendment. The circuit court ruled that the Board complied with the requirements of section 10-23.8 of the Code when it voted to adopt the fourth amendment to the Agreement and that the Board failed to prove that it was entitled to the

No. 1-09-0629

relief it sought. The Board filed the instant appeal.

ANALYSIS

I. Standard of Review

"The burden of proof in a civil proceeding generally rests on the party seeking relief and is always borne by the plaintiff in an action for declaratory judgment." Muhammad v. Muhammad-Rahmah, 363 Ill. App. 3d 407, 414 (2006). The proper standard of review to be applied to declaratory judgment actions depends on the nature of the proceedings that occurred in the trial court. Pekin Insurance Co. v. Hallmark Homes, L.L.C., 392 Ill. App. 3d 589, 593 (2009). A trial court's factual and credibility findings in a declaratory judgment action will not be disturbed unless such findings are against the manifest weight of the evidence. See Pekin Insurance Co., 392 Ill. App. 3d at 593; Muhammad, 363 Ill. App. 3d at 414. Accordingly, to the extent that the trial court's decision is not based on factual determinations that are uniquely within its province, a trial court's decision in a declaratory judgment action is subject to *de novo* review. Pekin Insurance Co., 392 Ill. App. 3d at 593. Moreover, issues involving statutory interpretation (Bernstein v. Department of Human Services, 392 Ill. App. 3d 875, 886 (2009)) as well as contract interpretation are also subject to *de novo* review (State Farm Fire & Casualty Co. v. Martinez, 384 Ill. App. 3d 494, 498 (2008)). Keeping these principles in mind, we address the arguments raised by the Board on appeal.

II. Sufficiency of the Performance and Improvement Goals

The Board first contends that the fourth amendment of the Agreement is void because it failed to enumerate measurable, performance-based goals in violation of section 10-23.8 of the

10

No. 1-09-0629

Code. Specifically, the Board claims that the stated goals incorporated into the fourth amendment are illusive and immeasurable. The Board correctly observes that no Illinois Appellate or Supreme Court opinion has addressed the construction of section 10-23.8 of the Code, making this issue one of first impression in Illinois. Defendant responds that although section 10-23.8 of the Code mandates that multiyear contracts for superintendents be performance-based and linked to student performance and academic improvement, it does not identify standards for setting the goals or measuring their achievement. Instead, defendant emphasizes that implementation of section 10-23.8 of the Code is explicitly and properly vested in the Board. 105 ILCS 5/10-23.8 (West 2004). He further asserts that the fourth amendment, which incorporated paragraph 3 of the Agreement and listed six goals in an exhibit attached thereto, clearly comported with section 10-23.8 of the Code.[1] We agree with defendant's position and hold that the Board did not violate section 10-23.8 of the Code by implementing the fourth amendment to the Agreement because the goals outlined therein were measurable and related to defendant's performance.

Section 10-23.8 of the Code provides, in pertinent part:

"[S]chool districts may only employ a superintendent under either a contract for a period not exceeding one year or a performance-based contract for a period not exceeding 5 years.

Performance-based contracts shall be linked to student performance and academic

---

[1] The six goals listed in exhibit A to the fourth amendment are: (1) increase test scores; (2) adhere to a five-year financial plan; (3) promote parental involvement; (4) assure students are ready for life; (5) increase professional growth; and (6) reduce discipline referrals.

improvement within the schools of the districts. No performance-based contract shall be extended or rolled-over prior to its scheduled expiration unless all the performance and improvement goals contained in the contract have been met. Each performance-based contract shall include the goals and indicators of student performance and academic improvement determined and used by the local school board to measure the performance and effectiveness of the superintendent and such other information as the local school board may determine." 105 ILCS 5/10-23.8 (West 2004).

The issue before this court, based on the parties' arguments, is how the performance and improvement goals are determined and measured pursuant to section 10-23.8 of the Code. This is a statutory construction question and an issue of law that we review *de novo*. People v. Roake, 334 Ill. App. 3d 504, 510 (2002).

The cardinal principle of statutory interpretation is that the court must effectuate legislative intent. In re Justin M.B., 204 Ill. 2d 120, 123 (2003), citing Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc., 158 Ill. 2d 76, 81 (1994). The best indicator of legislative intent is statutory language. Michigan Avenue National Bank v. County of Cook, 191 Ill. 2d 493, 504 (2000). Courts should consider the statute in its entirety, keeping in mind the subject it addresses and the legislature's apparent objective in enacting it. People v. Taylor, 221 Ill. 2d 157, 162 (2006), citing People v. Davis, 199 Ill. 2d 130, 135 (2002). A reviewing court's inquiry, however, must always begin with the language of the statute itself, which is the surest and most reliable indicator of the legislature's intent. Taylor, 221 Ill. 2d at 162; People v. Pullen, 192 Ill. 2d 36, 42 (2000). When the language of a statute is clear, it must be applied as written

12

No. 1-09-0629

without resort to further aids or tools of interpretation. In re R.L.S., 218 Ill. 2d 428, 433 (2006). If statutory language is plain, the court cannot read in exceptions, limitations or conditions into a statute that the legislature did not express. In re D.D., 196 Ill. 2d 405, 419 (2001); Garza v. Navistar International Transportation Corp., 172 Ill. 2d 373, 378 (1996), quoting Solich, 158 Ill. 2d at 83. Only when the meaning of the enactment cannot be ascertained from the language itself may a court look beyond the language and resort to aids for construction. In re D.D., 196 Ill. 2d at 419; Gem Electronics of Monmouth, Inc. v. Department of Revenue, 183 Ill. 2d 470, 475 (1998); Solich, 158 Ill. 2d at 81.

Defendant places great emphasis on the fact that section 10-23.8 of the Code plainly states, with regard to a superintendent's contract, that the formulation of goals, indicators of student performance and indicators of academic improvement, as well as the manner in which these objectives are to be measured, is left explicitly and exclusively to the local school board's determination. We find this interpretation of the provision to be sound from a statutory construction perspective because the language is clear and unambiguous. In our view, it cannot be reasonably argued that any specific criteria is required under section 10-23.8 other than improvement related to student and academic performance. We agree that this interpretation is also consistent with the remaining sections of the Code, which place broad discretion in local school boards in making their superintendent employment decisions. See section 10-16.7 105 ILCS 5/10-16.7 (West 2006) ("the school board shall make all employment decisions pertaining to the superintendent [and] *** shall direct, through policy, the superintendent in his or her charge of the administration of the school district, including without limitation considering the

13

recommendations of the superintendent concerning the budget, building plans, the locations of sites, the selection, retention, and dismissal of employees, and the selection of textbooks, instructional material, and courses of study. The school board shall evaluate the superintendent in his or her administration of school board policies and his or her stewardship of the assets of the district"); see also 105 ILCS 5/10-20 (West 2004) ("The school board has the powers enumerated in the Sections of [the School Code]. This enumeration of powers is not exclusive, but the board may exercise all other powers not inconsistent with this Act that may be requisite or proper for the maintenance, operation, and development of any school or schools under the jurisdiction of the board").

We are further convinced that the Board is better situated than is this court to determine the sufficiency of the goals and evaluate the indicia of improvement within the district because it is comprised of locally elected officials who are charged with the oversight and administration of the schools located within that district. These elected individuals are held directly accountable to the voters in their district for their decisions pertaining to the employment of a superintendent and they are familiar with the unique issues affecting education in their district. Moreover, as residents of this local governmental unit, Board members have a great interest in ensuring and promoting the continued success and improvement of their school district. We therefore hold that, in the absence of a clear abuse of the Board's statutorily granted discretion in setting goals and measuring progress toward those goals, it would be improper for the courts to interfere with the Board's exercise of that discretion. Based on our reading of the statute at issue here, there is no doubt that the Code permits each school board to create goals, identify specific criteria with

which to determine whether those goals are being met, and make findings as to whether those goals have in fact been satisfied by a particular superintendent.

The Board's contention that the fourth amendment to the Agreement lacked measurable goals simply ignores the fact that six goals are listed in exhibit A to the amendment and that paragraph 3 of the Agreement is specifically incorporated into the fourth amendment. The Board does not contend in its brief on appeal that paragraph 3 does not comply with section 10-23.8 of the Code, which references the evaluation of student performance, standardized test scores, curriculum completion, attendance and drop-out rates, a review of the curriculum and instructional services and requires that the superintendent report findings pertaining to student performance, curriculum recommendations and instructional changes to the Board. While we agree that the goal of "assuring students are ready for life" is very broad, the Board could certainly rely on other criteria which defendant presented to it, such as drop-out, graduation and college acceptance rates, to measure this goal. Moreover, we find that the remaining goals in exhibit A, namely, increasing test scores, adhering to a five-year financial plan, promoting parental involvement, increasing professional growth and reducing discipline referrals, are all measurable and legitimate goals formulated by the Board pursuant to its broad grant of authority in section 10-23.8 of the Code. Accordingly, we conclude that the circuit court did not err in finding that the fourth amendment contained measurable performance-based goals and was enforceable and we thus reject the Board's argument that the amendment violated section 10-23.8 of the Code.

### III. Satisfaction of the Performance and Improvement Goals

The Board next contends that the trial court erred in finding the fourth amendment to the

No. 1-09-0629

Agreement enforceable because the performance and improvement goals of the third amendment were not satisfied prior to entering into the fourth amendment. First, the Board claims that the third amendment, which extended defendant's contract from July 1, 2005, to June 30, 2007, was not in effect at the time the fourth amendment was passed on November 14, 2004. The third amendment states "the term of the superintendent's employment *** is hereby extended two additional years from July 1, 2005 through and including June 30, 2007." As a result, the Board asserts that the third amendment was not yet in effect and the goals contained therein could not have been satisfied on November 15, 2004, when the fourth amendment was passed. The Board also points out that had it not extended defendant's contract term in the third amendment, defendant's employment would have ended on July 1, 2005. This, according to the Board, is further evidence that the plain language of the third amendment supports its position that it was not in effect when the fourth amendment was passed. As a result, there could be no satisfaction of the statutorily required performance and improvement goals because the third amendment's goals were future requirements that defendant could not have satisfied prior to July 1, 2005. Second, the Board argues that even if the third amendment to the Agreement were in effect at the time that it voted to approve the fourth amendment, the evidence adduced at trial proved that defendant did not meet the performance and improvement requirements before it adopted the fourth amendment, and thus the trial court erred in finding the fourth amendment enforceable. We disagree with both propositions.

The Board refuses to acknowledge any part of the third amendment *other than* the time frame stated therein that extended defendant's superintendent term. We find that the Board's

focus on one selected portion of the amendment to support its position, while ignoring other relevant passages, fails to comport with either well-established contract construction principles or the prevailing law in Illinois. See Gallagher v. Lenart, 226 Ill. 2d 208, 233 (2007), citing Martindell v. Lake Shore National Bank, 15 Ill. 2d 272, 283 (1958) (stating that "[t]he intent of the parties is not to be gathered from detached portions of a contract or from any clause or provision standing by itself"). Most notably, the third amendment also contained a provision for a salary increase, an entitlement to a tax-deferred annuity, and a bonus if a new high school were opened prior to August 2005. We would be hard pressed to agree with the Board's argument concerning the effective date of the third amendment when defendant was expected to plan the opening of a new high school in August of 2005, but was not obligated to prepare to satisfy that goal until the third amendment became effective one month earlier in July 2005. Furthermore, it is apparent from the practice employed by the parties during negotiations over the first and second amendments to the Agreement, as well as the testimony adduced at trial, that it was the Board's general practice to renegotiate defendant's contract term prior to the expiration of the current employment period. Moreover, the opening paragraph of the third amendment states that it was made and adopted on December 15, 2003. When the amendment is read as a whole, we agree with the circuit court's finding that the third amendment was passed, adopted and became effective on December 15, 2003. Therefore, the Board's claim that the third amendment was not in effect at the time of the fourth amendment's passage is simply without merit.

The Board nonetheless further asserts that even if the third amendment were in effect at the time it passed the fourth amendment, defendant did not meet the performance and

17

improvement goals contained in the third amendment. Defendant contends that the circuit court properly found that the Board, which was vested with the power to enumerate the superintendent's performance goals and determine whether he had satisfied those goals, had sufficient information before it to find that defendant satisfied the goals the Board had set for him. We agree with defendant and conclude that the circuit court correctly found that the Board failed to present sufficient evidence that its decision to adopt the fourth amendment was improperly undertaken and void based on defendant's failure to meet the goals in the third amendment.

The circuit court, following trial, issued a well-reasoned, extensive and detailed written opinion holding that the defendant's performance, as it related to the goals in the third amendment, was properly evaluated by the Board and the Board had not established that any improper matters were considered in approving the fourth amendment. The circuit court also held that the majority of the Board members who voted in favor of passing the fourth amendment to the Agreement considered all required matters in connection with their voting and that nothing that the Board had considered rendered its vote to approve the fourth amendment null and void. The Board, however contests the trial court's finding, arguing that defendant merely recited general ambitions that he had in the future and did not present evidence that he had met the required goals of the third amendment before it voted to adopt the fourth amendment. We find the Board's argument unavailing, as it is contradicted by the record, and hold that the circuit court did not err in finding that the Board properly evaluated defendant's performance and determined that he had satisfied the performance goals prior to voting to adopt the fourth amendment to the Agreement.

First, we point out that the language of the fourth amendment contains a clear statement that all performance goals contained in the earlier agreements, including the third amendment, were met and satisfied. Also, the circuit court found that defendant had met the requirements of the third amendment with respect to reviewing, reporting and making recommendations. We note that between the effective date of the third amendment and the approval of the fourth amendment, defendant furnished the Board with written information on matters that were currently in progress such as the student curriculum, instruction, attendance, as well as a plan for addressing attrition among, and recommendations for, personnel through 2010. The Board was present for defendant's proposal for revamping the student curriculum that defendant and his staff had developed as well as for the comprehensive proposal he developed for reorganizing the district, which included plans for evening high school classes, summer school programs, as well as the establishment of a freshman campus and small learning communities.

Although we agree that much of defendant's presentation dealt with reorganization and future plans for the District, we do not agree with the Board that the progress being made toward those satisfying those goals was mere ambition. The fact that some of the goals that the Board established for defendant to satisfy required significant planning and ongoing modification does not render the efforts that defendant devoted to those improvements wholly worthless. We hold that the record contained more than sufficient evidence for the Board to decide that the third amendment's goals had been met and that the Board could not, in the face of the overwhelming evidence to the contrary, establish that defendant had failed to meet the required goals before entering into the fourth amendment to the Agreement.

No. 1-09-0629

IV. Legislative Intent of Section 10-23.8 and Public Policy Issues

Finally, the Board argues on appeal that the circuit court's finding that the fourth amendment was valid and enforceable ignored the legislative intent of section 10-23.8 of the Code. Specifically, the Board argues that the fourth amendment, which renewed defendant's superintendent contract for a period of years that extended into the terms of future Boards, is against public policy in Illinois.

First, we find the argument with regard to the intent of section 10-23.8 to be meritless because the language of the statute clearly and unambiguously empowers the Board to set and measure the goals to be set for its superintendent. Because we have already determined that the Board established proper goals and held defendant accountable for satisfying them, the Board's argument is without merit. We further find the Board's claim that the adoption of the fourth amendment to the Agreement had the effect of "tying the hands of subsequent Boards," unpersuasive because section 10-23.8 of the Code explicitly provides for multiyear contracts without any limitation relating to the Board's composition or subsequent elections. Consequently, we hold that the circuit court's ruling, finding the fourth amendment valid and enforceable, is not against public policy.

CONCLUSION

For the foregoing reasons, we reject the Board's contention that the trial court erred in finding that the fourth amendment to the Agreement complied with section 10-23.8 of the Code and was valid and enforceable. Rather, we conclude that: the Board properly enumerated goals that measured defendant's performance in the fourth amendment to the Agreement in

20

conformance with section 10-23.8 of the Code; the goals set by the Board were satisfied by defendant; the circuit court did not disregard the legislative intent of section 10-23.8 of the Code in finding the fourth amendment valid and enforceable; and the terms of the fourth amendment did not violate public policy. Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

HALL, P.J., and LAMPKIN, J., concur.