2023 IL App (2d) 230158-U
No. 2-23-0158
Order filed October 16, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| SWATI PATEL and JYOTSHA K. PATEL | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| Plaintiffs-Appellees, | ) | |
| | ) | |
| v. | ) | No. 23-MR-27 |
| | ) | |
| PRAIRIE LAKES HOMEOWNERS | ) | |
| ASSOCIATION OF ILLINOIS, INC,. an | ) | |
| Illinois not-for-profit corporation, | ) | Honorable |
| | ) | Robert E. Douglas, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices Jorgensen and Mullen concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Defendant waived its contentions regarding the expedited nature of the underlying proceedings pursuant to 735 ILCS 5/2-701(b) due to failure to raise the issue in the trial court and agreeing to the expedited schedule. The trial court's findings in favor of plaintiffs were not an abuse of discretion.

¶ 2   Defendant, Prairie Lakes Homeowners Association of Illinois, Inc., appeals from the trial court's order finding in favor of plaintiffs, Swati and Jyotsha Patel, on their verified complaint for declaratory relief.  Defendant contends that the trial court made several procedural errors pursuant to section 2-701 of the Code of Civil Procedure (Code) (735 ILCS 5/2-701 *et seq*. (West 2020))

and committed reversible error in its evidentiary findings in favor of plaintiffs. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     On September 29, 2021, plaintiffs acquired title to property identified as Lot 90 in Unit 2 of the Prairie Lakes Subdivision (the subdivision) with a common address of 39W613 Switchgrass Lane, St. Charles. Defendant acts as the established homeowner's association (HOA) of the subdivision. At the time that plaintiffs filed their verified complaint for declaratory relief, January 24, 2023, the subdivision contained 150 platted single-family lots and was approximately 90% built out with 130 completed homes and 20 vacant lots.

¶ 5     The properties in the subdivision are subject to a collective set of governing documents consisting individually of (1) a declaration of covenants titled the "Second Amended Declaration of Covenants, Restrictions and Easements for Prairie Lakes Subdivision, Kane County, Illinois" (the declaration); (2) a set of bylaws for the HOA titled "Second Amended Bylaws" (the bylaws); (3) HOA adopted rules and regulations titled "Prairie Lakes Homeowner Association Rules, Regulations & Enforcement" (the rules and regulations); and (4) HOA adopted architectural guidelines titled "Guidelines for Construction and Property Updates and Changes" (architectural guidelines).

¶ 6     Relevant here, Article II, Section 2.2(A)(4) of the declaration provided as follows:

"4. Method of Obtaining Board Approval. In order to obtain the approval of the Board, a complete set of plans and specifications for proposed construction and any and all other reasonably requested information and material related thereto ("Plans") shall be submitted to the Board for its review. The Plans shall include, as appropriate, the proposed location, grade, elevations, shape dimensions, exterior color plans, landscaping plans,

approximate costs, and nature, type and color of materials to be used \*\*\*. The Board shall evaluate all Plans utilizing standards of the highest level as to the aesthetic quality and materials and workmanship to be used and as to suitability and harmony of location, structure and external design in relation to surrounding topography and structure."

Article II, Section 2.2(A)(8) of the declaration provided as follows:

"8. Development Standards. The Board is empowered to publish or modify from time to time, design and development standards ("Standards") for PRARIE LAKES, including but not limited to standards for the following: i) Architectural design improvements; ii) fences, walls and similar structures; iii) exterior building materials and colors; iv) exterior landscaping; v) exterior appurtenances relating to utility installations; vi) signs and graphics, mailboxes and exterior lighting; vii) building set backs, pools and pool decks, side yards and related height bulk and design criteria; viii) pedestrian and bicycle ways, sidewalks and pathways; and ix) all buildings, landscaping and improvements on land owned or controlled by the Association \*\*\*."

Article II, Section 2.2(B)(18) of the declaration provided as follows:

"18. Rules and Regulations. Each owner shall be subject to such rules and regulations with respect to PRARIE LAKES as the Association determines from time to time to be in the best interest of the Association and the Owners provided that no rules and regulations promulgated by the Association shall conflict with the provisions of this Declaration."

¶ 7 In addition to the requirements in the declaration, the architectural guidelines' "Design Review Approvals" section required the following information for approval:

"1. Location

2. Grade

3. Elevations

4. Shape dimensions

5. Exterior color plans

6. Landscaping plans

7. Approximate costs

8. Nature, type and color of material to be used[.]"

The "Key Design Guidelines" section of the architectural guidelines summarized the following elements that the architectural review board "requires, recommends and/or encourages" for approval:

"1. Professionals must have demonstrated qualifications in their fields of planning, architecture, landscape design, engineering and surveying.

2. Home designs must be compliant with all design restrictions as found in the Covenants.

3. Residences must be of overall, high-grade, superior quality construction with emphasis on good design and the use of natural materials.

4. Minimum square footage shall conform to that set forth in the Declaration of Covenants and follow the ANSI method of calculation.

5. Homes are required to be of "stick built" constructions. No componentized of modular type construction is allowed.

6. Exterior walls are to be 2X6 construction with 16 inches on center.

7. Foundations of all homes (exclusive of the garage) shall be of elevated framed construction.

8. Slab foundation homes without a basement and crawl space will not be allowed. Foundations should be a deep pour in order to accommodate a minimum 9-foot finished ceiling.

9. All home landscaping, exteriors, and interiors should reflect a quality level consistent with the existing community of homes.

10. The interior ceiling height of the 1st floor shall be no less than 10 feet and 2nd floor shall be no less than 9 feet.

11. No unfinished second floors."

The "Exterior Materials" section of the architectural guidelines provided as follows:

"1. Brick, stone, cedar and cement board are the only approved exterior building materials. Manufactured stone will not be permitted.

2. Homes must be a minimum of 75% brick or stone on all sides.

3. Samples and approximate costs of all exterior building materials (brick, stone, etc.) should be provided with application.

4. At least one brick, or stone masonry fireplace is required. The masonry fireplace must continue all the way to the home's foundations. If a fireplace is on the second story it may be directly vented through the root provided the vent matches the roof color.

5. The front of the home must include a masonry address on the driveway side uniform in size and style as the existing homes.

6. Deep pour foundations in order to accommodate a minimum 9-foot finished basement ceiling.

7. Homes must be stick built on site and not prefabricated."

The "Roof Pitch/Roofing Materials/Attachments" section of the architectural guidelines provided as follows:

"1. Minimum architectural series shingles for the roof.

2. Minimum 12:12 pitch roof.

3. Copper Flashing (flashing/metal roof/ornamental feature) material must be used, no other metal material may be used.

4. Attic vents must be placed on the rear slopes of the roof and must match in color.

5. Satellite dish can be no larger than 18" in diameter and must be installed on the back of the home so that it is not visible from the road. Preferable installation would be within the attic of the home if at all possible.

6. Solar panels are not allowed."

¶ 8    Plaintiffs submitted their application including plans for a 4,910 square foot, 2-story home to the architectural review board (ARB). Plaintiffs' builder was Distinctive Homes by DeMarco (DeMarco), which had built many other homes in the subdivision for more than 15 years. The architect, Michael J. Grimson, worked with the builder over that period on all homes in the subdivision.

¶ 9    On September 13, 2022, the ARB responded to plaintiffs' application with a list of 23 items to address. On September 16, 2022, DeMarco responded to ARB and address each of the noted items. Regarding the ARB's note that "[c]opper is the only allowable material" for roofing, DeMarco responded that "[c]opper was originally shown here but since then the mother advised this was not allowed with their faith[.]" On September 22, 2022, DeMarco sent an email to the HOA's property management company noting that it needed to proceed with construction as it had not heard a response from the ARB. DeMarco broke ground on the lot on September 23, 2022.

¶ 10     DeMarco received an email from the HOA's property management company ordering a stop to the building. DeMarco resubmitted his September 16, 2022, response to the 23 items noted as the property management company was unaware of it. DeMarco agreed to complete work on the home's foundation but would cease further work if there were any further issues.

¶ 11     On October 14, 2022, DeMarco was forwarded an email from the HOA's architect that it had not previously received. The email appeared to have been prepared without having reviewed DeMarco's September 16, 2022, response. DeMarco expressed its frustration with the lack of communication between the various HOA entities that had caused delays in building.

¶ 12     On October 18, 2022, the HOA's property management company responded on behalf of the ARB and noted the following seven outstanding items:

"1. The front porch in general appears very plain and could benefit from additional refinement.

2. The 2-story element on the right-side elevation looks very boxy and needs further refinement.

3. As the front porch wraps around the left elevation, it just abruptly ends. It may look better if the port continued another 7' or so toward the back and ended where the house bumps out just after the room labeled "puja."

4. The rear elevation in general looks very long and could benefit from design enhancements. The left side of the rear elevation still appears as a large blank brick wall even though 2 windows were added.

5. The covenants require the ceilings to include additional details and features, none are shown on the first floor.

6. Covenants require the main stair to be factory milled with wrought iron balusters, no notes are provided regarding the main stair.

7. The covenants require every home to have a covered side entry. There is a side entry door shown on the garage, but it isn't covered."

¶ 13 Later on October 18, 2022, DeMarco responded to the HOA's architect and identified that each of the seven items had already been addressed or was not required by the HOA's governing documents. On October 19, 2022, DeMarco received a cease-and-desist letter from the HOA's legal counsel stating that DeMarco had not addressed the HOA board's concerns.

¶ 14 After unsuccessful attempts to reach resolution, plaintiffs received notice from the HOA's legal counsel that the same seven issues needed to be addressed before building could proceed, as well as four new demands: (1) the roofing, aside from the main roof, must be cooper; (2) windows must be added to the first floor rear elevation where the indoor basketball court is located; (3) masonry piers must be added to the end columns for the porch; and (4) additional interior trim detail must be added.

¶ 15 Further unsuccessful negotiations continued before plaintiffs filed a verified complaint for declaratory relief on January 24, 2023, and alleged the foregoing. Plaintiffs requested that the trial court declare that their application be approved "as-is" and further declare that they (1) not be required to use copper roofing material; (2) not be required to add masonry piers to the base of certain porch pillars; (3) not be required to add windows to the rear elevation of the home; (4) not be required to add a roof to the side entry on the right side of the home; and (5) not be required to incorporate interior design requests of the HOA.

¶ 16    On February 8, 2023, plaintiffs filed a motion for expedited briefing schedule and hearing on complaint for declaratory relief pursuant to section 2-701(b) of the Code. On February 16, 2023, the parties appeared before the trial court and the following exchange took place:

"THE COURT: And then there's the question of [plaintiffs' counsel] wanting to expedite the matter.

[DEFENDANT'S COUNSEL]: Yeah. So I was going to suggest *** I mean, they want to have a hearing and treat their complaint as a motion. So my answer could be my response brief and then give them time to do a reply, and we can set it for hearing ***.

THE COURT: All right.

[PLAINTIFFS' COUNSEL]: That would be great, Judge, if that will work.

THE COURT: My only concern is, at least as I read the complaint, one of the allegations is that there are other homes that don't comply with some of the demands. I think the copper roof was one of them.

[PLAINTIFFS' COUNSEL]: Right. That's a fair point. And maybe what we could do is once his complaint *** or his answer to the complaint is on file, it may be a really short time for me to do a short motion with his response. That way we could include photos of things that are referenced in the complaint, if that makes sense.

[DEFENDANT'S COUNSEL]: That's okay with me too.

THE COURT: All right."

An agreed order was entered, reading as follows:

"THIS MATTER coming before the court for status and setting for Plaintiffs' Motion for Expedited Hearing pursuant to 735 ILCS 5/2-701(b), the Parties being in agreement and the Court being duly advised in the premises:

**It is Hereby Ordered:**

1. Attorney John Felton is granted leave to file his appearance on behalf of Defendant.

2. Defendant shall file its responsive pleadings to the Complaint on or before March 10, 2023.

3. Plaintiff shall file its Motion and Memorandum of Law in support of Declaratory Relief on or before March 10, 2023.

4. Defendant shall file its Response to Plaintiff's Motion and Memorandum of Law on or before March 23, 2023.

5. This matter is set for hearing on the Motion and Memorandum of Law on March 20, 2023, at 10:00 a.m. in Courtroom 320."

¶ 17    On April 20, 2023, a hearing was held on plaintiffs' motion in support of declaratory relief wherein plaintiffs introduced and discussed a litany of photographs depicting other homes in the subdivision that lacked copper flashing on the roofs and masonry piers on the porch columns. The trial court reviewed the governing documents before issuing its ruling.

¶ 18    In finding in favor of plaintiffs, the trial court's order articulated as follows:

"**The Court Finds:**

1. Copper Roofing. The Governing Documents require copper material only for flashing, metal roofs and ornamental features, but do not otherwise require copper roofing. Any requirement for copper roofing rather than asphalt shingles on the Property is therefore purely arbitrary and subjective and therefore unenforceable, particularly where numerous other homes in the Subdivision contain all asphalt roofing.

2. Covered Side Entry. The Governing Documents do not require roofing on side entrances.

The Court notes that the plans for the Property contain a covered side entry on the left side elevation and any requirement that an additional roof is required on the side entrance on the right-side elevation is therefore purely arbitrary and subjective and therefore unenforceable.

3. Masonry Piers on Porch. The Governing Documents do not require masonry piers on the porch columns. Any requirement for such masonry piers on the Property is therefore purely arbitrary and subjective and therefore unenforceable, particularly where numerous other homes in the Subdivision contain porch columns with no masonry piers.

4. Additional Windows on Rear Garage Elevation. The Governing Documents contain no specific requirement for the arrangement of windows, but the Court finds this issue less subjective than the other issues. Nevertheless, Plaintiffs have added additional windows to the 2nd floor rear elevation of the Garage and there are numerous side elevations of other homes within the Subdivision which lack windows. Any requirement to add windows to the first-floor elevation at this location is therefore purely arbitrary and subjective and therefore unenforceable. The Court finds that side elevations should be subject to at least the same if not higher scrutiny than rear elevations.

5. Interior Design Elements. The Court finds that this issue is moot as the Association does not intend to enforce the specified elements and the Plaintiffs have otherwise included the specified elements.

**It is Therefore Ordered:**

A. The Court finds in favor of the Plaintiffs and against the Defendant.

B. The Court hereby declares that the Plans submitted by Plaintiff be immediately approved as submitted except for the following:

(i). Plaintiffs shall not be required to install copper roofing but shall otherwise be required to install copper flashing.

(ii). Plaintiff shall not be required to add masonry piers to the base of the porch pillars.

(iii). Plaintiff shall not be required to add windows to the first floor rear elevation of the garage.

(iv). Plaintiff shall not be required to add a roof to the side entry on the right side elevation of the home.

C. The Court grants Plaintiffs leave to submit a fee petition for the Court's consideration if the Parties are unable to resolve that issue."

¶ 19     Defendants then filed this appeal.

¶ 20                                    II. ANALYSIS

¶ 21     Defendant first contends that plaintiffs did not have a right to an early hearing under section 2-701(b) of the Code because the relief requested, as well as the relief granted, went beyond a declaration of rights. Defendant argues that plaintiffs' verified complaint requested "injunctive" relief as it prayed for the trial court to "declare that plaintiffs' [Architectural] Application be approved as-is." Defendant argues that it was prejudiced by the trial court's "failure to identify a legally cognizable procedure" and that is "right to fundamental justice" was violated by the expedited hearing on plaintiffs' verified complaint.

¶ 22     Not only did defendant fail to raise the issue that plaintiffs were not entitled to an early hearing pursuant to section 2-701(b) of the Code, but it also expressly entered into an agreed order reflecting as such. See *supra* ¶ 16.

¶ 23    Generally, an order entered by agreement of the parties is not subject to appellate review. *Berymon v. Henderson*, 135 Ill. App. 3d 858, 864 (1985).

> "An agreed order is a recordation of the agreement between the parties and is not a judicial determination of the parties' rights. [Citations.] For this reason, an agreed order generally is not subject to appellate review. [Citations.] Such an order is conclusive on the parties and can be amended or set aside by one of the parties only upon a showing that the order resulted from fraudulent misrepresentation, coercion, incompetence of one of the parties, gross disparity in the position or capacity of the parties, or newly discovered evidence." *In re Haber*, 99 Ill. App. 3d 306, 309 (1981).

The record shows that the parties were in complete agreement as to the circumstances surrounding the expedited nature of the hearing on plaintiffs' verified complaint. Indeed, following the entry of the agreed order, the parties fulfilled their respective obligations pursuant to the terms of the order. Due to defendant's failure to raise this issue with the trial court and its express consent to the terms of the order, it cannot show that it was prejudiced by the nature of the underlying procedure. Thus, defendants' contention and arguments concerning section 2-701(b) of the Code are waived as they are not subject to appellate review.

¶ 24    Defendant's remaining arguments in this appeal concern the trial court's findings in favor of plaintiffs on their verified complaint for declaratory relief and rely on the following broad assertion: "The [Defendant's] Architectural Requirements Need Not Be Specifically Elicited When It Is the Clear Intention of the Governing Documents to Create a Subjective Approval Authority at the Sole Discretion of the Association Concerning Aesthetic Considerations in Furtherance of an Express Purpose and General Plan." Specifically, defendant argues that the trial

court committed reversible error in its findings regarding copper roofing, masonry piers at the base of the porch columns, additional windows on the rear elevation, and covered side entry.

¶ 25    The standard of review applied to a declaratory judgment depends upon the nature of the trial court proceeding. *Pekin Insurance Co. v. Hallmark Homes, L.L.C.*, 392 Ill. App. 3d 589, 593 (2009). Legal determinations are subject to *de novo* review, while factual determinations are reviewed for an abuse of discretion. *Id.*; accord *In re Marriage of Rife*, 376 Ill. App. 3d 1050, 1060 (2007). As defendant's remaining arguments are directed at the trial court factual findings, we will review those findings for an abuse of discretion.

¶ 26    A restrictive covenant in which the HOA reserves the right to consent to building plans will be enforced, but the exercise of the power of review in a particular case must be reasonable and not arbitrary. *Westfield Homes, Inc. v. Herrick*, 229 Ill. App. 3d 445, 451 (1992). Minor violations of a restrictive covenant will not prohibit the subsequent enforcement of it. *Amoco Realty Co. v. Montalbano*, 133. Ill. App. 3d 327, 333 (1985). "However, where there has been acquiescence in prior violations of the very substance of a general plan or particular restriction, the [HOA] will be held to have waived any right [it] may have had to enforce it." *Id.*

¶ 27    The trial court reviewed evidence that showed more than 20 homes in the subdivision had been constructed with asphalt shingles as opposed to copper flashing material. As to the requirement of masonry piers at the base of the porch columns, none of the governing documents mention such a requirement. Additionally, the trial court reviewed evidence showing that multiple homes in the subdivision did not use masonry piers at the base of the porch columns. Defendant has waived any right to enforce those alleged violations.

¶ 28    The governing documents also contain no provision that plaintiffs would be required to install additional windows on the rear elevation. The trial court's comment that this subjective

addition was "a bit nit-picky" is wholly accurate in the absence of a contractual requirement. Additionally, plaintiffs intend to use the space where defendant claims the additional windows should be as an indoor basketball court. As plaintiffs suggest, acquiescence to defendant's request could pose potential safety hazards to an area with basketballs flying about. Finally, while the architectural guidelines do contain language that "[h]omes must include a side entry or service door with glass elements," there is no requirement that the side entry or service door be covered.

¶ 29 Accordingly, we hold that we have no basis upon which to conclude that the trial court abused its discretion in finding in favor of plaintiffs on their verified complaint for declaratory relief.

¶ 30                                    III. CONCLUSION

¶ 31 For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 32 Affirmed.